Brian Maguire, 12887/104501
USA, Og 5, I-10
PO Box 250
Draper, UT. 84020-0250

FILED
U.S. DISTRICT COURT

2010 SEP 20 P 4: 02

DISTRICT OF UTAH
BY: _____
DEPUTY CLERK

In the United States District Court

District of Utah, Central Division

---

Brian Maguire,
   Plaintiff,

   V.

Thomas E. Patterson, et. al.,
   defendants.

Affidavit in Support
of "Request"

No. 2:10-cv-00626 CW

---

   This caption page is intended to incorporate in to the indicated case before this court, the below sworn statement of Brian Maguire which was originally prepared for and submitted to the Division of Occupational & Professional Licensing, Utah Department of Commerce.

   Respectfully submitted, under penalties of perjury, This 16 day of September, 2010.

      Brian Maguire

Brian Maguire, Plaintiff, Attorney pro se

Brian Maguire
12887/104501
CUCF, N2-603
PO Box 550
Gunnison, UT. 84634

In The Division of Occupational & Professional Licensing
Department of Commerce, State of Utah

| | |
|---|---|
| Brian Maguire,<br>    Petitioner, | Affidavit in Support<br>of "Request" |
| -vs- | |
| Dr. Richard Garden And<br>Dr. Bruce Burnham, et. al.,<br>    Respondents. | No. PR 10-05-009 |

State of Utah )
                    ) : S.S.
County of ~~Salt Lake~~ )
              Sanpete

    I, Brian Maguire, being duly sworn do hereby depose and say The following under Oath of Truth:

    1. I am 61 years old and have used Alcohol And drugs for most of my Adult life.

    2. I have previously sought And received medical Assistance To help me deal with withdrawal symptoms. As result but I have never experienced any serious Medical consequences

1

To be associated with withdrawal problems, prior to July, 2008.

3.  I have never experienced siesures nor convulsive fits of any sort prior to July, 2008. I have no such history, nor may any such be factually demonstrated.

4.  I began out-patient methadone therapy through Discovery House, 449 E. 2100 So., SLC, UT. early year 2008. By June, 2008, I was stable at 120 mg. dayly. My last dose was 7-1-08.

5.  During the months prior to my arrest for D.U.I. on June 30, 2008, I was tested for alcohol 3 times at A.P.&P. with the following results: 4-2-08, negative; 3-4-08, negative; and 2-26-08, positive. Additionally, parole officers regularly visited my home at random intervals and found me compliant, appearing clean & sober.

6.  The following paragraphs 7 through 30 are adapted directly from my previous "Attempted Request" which failed due to problems with the service[1]. Please tolerate the shift in person from "I" to "Maguire"? We are the same person.

7. PRIOR TO July, 08, MAGUIRE WAS NOT physically disabled.

8. MAGUIRE WAS RETURNED TO prison custody 7-2-08.

9. AT in-Take Med. exam on 7-3-08, MAGUIRE explained To Physician's AssisTanT (PA) AbboTT That he was currently Taking 120 mgs. oF methadone, dayly. That his last dose was The morning 7-2-08. MAGUIRE Told PA AbboTT That he (maguire) expected problems withdrawing from The methadone and asked AbboTT For help? AbboTT phoned an individual whom he idenTiFied AS Dr. GARden and explained MAGUIRE's concerns over The phone. AFTer hanging-up The phone, AbboTT Told MAGUIRE There would be no medical help For withdrawal. AbboTT offerred To put MAGUIRE in "ObseRVATION", (An isolated, cAMeRA-ed, sTrip-cell) which opporTunity MAGUIRE declined. AbboTT persCribed clonidine For The AnticipATed elevATed B.P., AmaTripTyline And ibuproFen For pAin.

10. OF in-Take exam, AbboTT RecoRded That MAGUIRE had ReFused phys. exam. ~~Maguire Ave (see attached grievance Responses)~~ MAGUIRE Avers This is False Record. Grievance

8 3

responses Also indicate That Maguire complained of Alcohol withdrawals[2]. Maguire avers This Too is false record. Maguire only indicated That his parole had been violated due To An alcohol related incident. It should be further noted That UMC was informed That Maguire had a history of Siesures[3]. No such history exists. Nor did Maguire suffer a fall, nor bump his head immediate To hospitalization.

11.  Some day(s) later, after in-take exam, Maguire was removed To "Obseevation"[4].

12.  At some point during "Obseruation", Maguire was removed from strip-cell by Med. Tech Steve ① And Nurse ②. He was given IV fluids, Then returned To The strip-cell[5]. Later, Dr. Roberts interviewed Maguire following which, Maguire was returned To Uinta 5, 7-14-08.

13.  On 7-15-08 (?) ~~An~~ inmate ③ noticed Maguire was having difficulty controlling left hand. Inmate ③ filled out And submitted request for emergency Med. visit, for Maguire.

4

14. Approx. 1430 hrs., 7-15-08, Maguire was given emergency visit with PA Abbott in Uinta 5. The officer ④ who escorted Maguire to the med. room, noted that Maguire was dragging left leg. Officer ④ informed P.A. Abbott of this observation.

15. PA Abbott examined Maguire at the emergency visit and diagnosed Maguire as suffering from muscle spasms.² He perscribed Flexeril to begin 7-16-08.

16. Approx. 1915 hrs, 7-15-08, Maguire suffered an attack of siesure like convulsions to his left arm, which quickly spread throughout his entire left body, leaving the effected area numb and without voluntary control.

17. At the on-set (No. 16 above) Maguire asked the other inmates who were locked in cells in F-section to call "Man Down" to bring help. Maguire remained responsive to concerned inmates in cells around him.

& 5

18.   During the event (No. 16) Maguire tried to lay down on his cell bed, but his left leg gave out on him leaving him half on half off the bed ... holding the opposite side with his right hand.   Maguire was in that position when officer (5) and Med. Tech. (6) arrived at the conclusion of the event.

19.   Med. Tech (6) tried to calm Maguire whose left hand was still twitching.   He helped Maguire to release his right hand hold on the bed and eased Maguire all the way to the floor.   Med. Tech (6) confirmed with other inmates that Maguire was communicating during event.   Then Med. Tech (6) and officer (5) moved the mattress to the floor and put Maguire on mattress.   Med. Tech. (6) said that was all he could do, but Maguire could notify officers ... indicating to officer (5) ... if he had any more trouble during the night.   He said there was nothing more that he could do, but that he would come if he was called.

¶ 6

20.   At 2030 hrs. stand-up count, Maguire did not stand... could not stand. Officer ⑦ demanded that Maguire stand-up and said he would report Maguire fore failure to comply.

21.   The convulsions/spasms to Maguire's left body continued periodically, all night long. First one area, then moving to another, and so on. Every hourly count, at some of which Maguire recognized officer ⑤ Maguire asked the counting officer to please call medical. Maguire received no response, not from officers, not from Medical.

22.   After breakfast, after pill-call, approx. 0800hrs, 7-16-08, Officer Bogden and Sgt. ⑧ came and helped Maguire in to a wheelchair and wheeled him to the Infirmary.

23.   At Infirmary, Dr. Tubbs briefly examined Maguire and ordered emergency transportation to hospital.[2] Maguire told Tubbs that an inmate gang

was Trying To inject him with poison. Med. Tech. (9)
spoke up and said That it was he who had injected
Maguire. He said That he had injected Maguire with
____(?)____ because That is what They give paTienTs
with delirium.

24. Para-medics arrived And put Maguire in
To An ambulance van, Then proceeded To a hospital in
Utah Valley. Once There, The para-medic (ambulance co point)  Bem
who was sTill having difficulty sTarTing I.V, Told Maguire
To hang on, A mistake had been made And They needed To
Take Maguire To a differenT hospiTal. The van Then Re-
Traced its journey back over The PoinT oP MounTain And
in To SalT Lake Valley, AlTa View HospiTal.

25. Maguire spenT A couple oP hours AT AlTa View
where CaT-scan Revealed bleed inside Maguire's brain.

26. Another Ambulance crew came And Took
Maguire To U.M.C. where emergency TreaTmenT Pinally
began some 24hrs. AfTer emergency visiT was RequesTed.[2]
( No 13 Above)

TR 8

27. On June, 22, approx. one week after mailing

78B-3-412.

~~78-44-8~~ notice to Dr. Garden, Maguire was moved from Draper prison to CUCF, Gunnison, UT. and forced in to the HOPE behavior modification program, modelled after Odyssey House. Maguire was already hard pressed to present this matter, pro se, and is greatly more debilitated from his current status. He will motion for appointment of pro-bono counsel as soon and as often as he may do so.

28. On June 25, Maguire's medical status was elevated from M1 to M2. M1(s) must be housed at Draper. M2 may be housed at CUCF. ~~Fixed~~

29. On July 2, 09, CUCF Dr. ~~Burningham~~ Bruce Burnham (?) discontinued Maguire's pain medication after eyeball exam, telling Maguire "The stroke and its effect is old business. Get over it!"[6]

30. Maguire avers he suffers pain. And that the Tramadol medication, which ~~Burningham~~ Dr. Burnham discontinued was effective.

T& 9

31.  In August, 2008, while I was being held in the infirmary after my stroke, I was told by a prison nurse that medical's duty to me ceased beyond making sure that I was breathing.  This was told to me by the individual identified as Nurse ② in paragraph 12. above.  This was said in the presence of the individual identified as Med. Tech. Steve ① in that same paragraph 12. as well.

32.  I have been unable to discover any record of vital signs taken and recorded during medical "observation" from 7-10-08 through 7-14-08.  And none from the "man-down" emergency on 7-15-08.

33.  I spent fall of 2008 in Draper prison's mental health facility, Olympus,[7] taking advantage of some comfortable conditions, conducive to recovery.

34.  First of year 2009, I transferred to the Oquirrh 5 Annex, Draper.[7] This transfer was made at my request to facilitate my acceptance in the Conquest Program, Draper.  Conditions at both Oquirrh 5 and

Conquest ARE conducive To physical Recovery. (e.g. in-door gym, equipment, & sTAff)

35. During spring 2009, I continued To Apply for Admission To Conquest from Oquirrh 5.

36. Approx. June 18, 2009, I provided Medical Director, Dr. Richard Garden with Notice of InTenT To Sue, Announcing my inTenTions To pursue MAl-practice clAim(s) AgAinsT him And his sTAff.

37. On June 22, 09, I was suddenly Trans-ferred from Draper prison To The CenTral UTah Correctional Facility[7] And placed in the HOPE Program. (CUCF)

38. There ARE no facilities AvAilAble AT CUCF (in-door gym, equipmenT, & sTAff) To promoTe my Recovery from sTRoke pArAlysis. WhAT meAger Resourses There Are hAve not been mAde AvAilAble To me.

39. There is only jungle-gym Type out-door equipmenT AvAilAble To me in The Fire yARd AReA. A TRack, baskeTball, baseball, handball/RackeTball, And horseshoes.

40. There is a universal weight lifting machine privy for use by inmates in my section. When I applied for permission to use that equipment in September, 09, Officer Jensen, Section F Counselor denied my request.

41. When I request an inmate volunteer ADA assistant to help me exercise and stretch, the ADA Review Committee officially denied the request stating that CUCF Medical has provided me with everything I need to complete my exercise alone.[8]

42. When I requested record of the equipment provided, I got only a run-a-round response.

43. I have applied for ADA accomodation allowing me access to document producing equipment. That request was denied, in part, due to false information provided to the ADA Review Committee. All of my attempts to discover the specific source of the false information have failed.[9]

44. In August/Sept., 2009, I ceased taking all medications available to me except ibuprofen and Zantac.

I know my stroke was the result of abrupt interreuption of a highly addictive medication, exacerbated by mal-treatment, and not some pre-existing medical condition which would require those other medications.

45. In February, 2010, I learned that those meds. I had returned and refused in August/Sept. 2009, were still being refilled and issued in my name, monthly. I began an Inmate Grievance addressing that matter, promptly. That matter is in process. [10]

46. In Oct./Nov., 2009, I wrote Dr. S. ~~Eddy~~ Edgely at UMC asking him to cancel all my future appointments there. The letter explained how the difficulty for me to keep any such appointments now out-weighed my need and the benefit to me. That request is honored by UMC.

47. I think I have identified Med. Tech. Steve ① from paragraphs No. 12 & 31 as Steve Mecham.

48. I think I have identified Med. Tech. ⑨

from PARAGRAPH No. 23 above as <u>MARVIN Anderson.</u>

49. I Think I have identified The medication with which I was injected Referred To in No. 23 as <u>ATivan.</u> This injection occurring in The Uinta 5 Med. Room on 7-10-08.

50. Documents attached hereTo Are authentic, or were authentically provided To me. They Are as follows:

Attachment A: UMC Discharge Summary.

B: MRI RepoRT.

C: Denied Prelitigation RequesT.

D: Exhausted Grievance: STRoke.

E: Exhausted Geievance: Medication.

F: Exhausted Grievance: Co-pay Issues.

G: Denial of ADA RequesT: AssisTanT To help with personal exercise program.

H: Denial of ADA RequesT: Access To document producing equipment.

14

I hereby swear under oath of truth that paragraphs 1 through 50 are true and correct to the very best of my personal knowledge. That the events described occurred as they are depicted and that the attached documents accurately represent what is officially recorded, but not necessarily the truth as I know it to be and have set forth accurately in paragraphs 1 through 50 above.

_____
Affiant, Petitioner, Attorney pro se
Brian Maguire

Subscribed and sworn to before me this __23__ day of __August__, 2010.

_____
Notary Public

M DELYNN SUMMERS
NOTARY PUBLIC-STATE OF UTAH
COMMISSION# 579504
COMM. EXP. 07-20-2013

Residing in: _Salt Lake_

Commission expires: _7/20/2013_

15

## Notes

Please note that the circled numbers, as in paragraph 12 are not endnotes? They were intended for indentification purpose only. (Affidavit in Support only)

## Endnotes

[1]   Please see Attachment C here?

[2]   Attach. D here

[3]   Attach. A

[4]   Attach D & Affidavit of Non-Disclosure No. 8

[5]   Affidavit of Non-Disclosure No. 8

[6]   Attach E

[7]   Affidavit of Non-Disclosure No. 7

[8]   Attach G

[9]   Attach H

[10]   All attempts to discover how much I owe have failed. For billing and collection practice, see Attach F?

U.M.C. Discharge

A

# FINAL DISCHARGE ORDER and PATIENT INSTRUCTIONS
## University Health Care Hospitals & Clinics

21 ECC

MRN C02430544 M 08/25/1948
MAGUIRE
BRIAN EDWARD
142429448 07/16/2008

Admission Date _7/16/08_          Discharge Date _7/22/08_
Service _Neurology_               Attending MD _Gordon Smith_
D/C dictated by _V. Potter_       Page _1_ of _2_

**Next Provider of Care:** *(Enter first, last name, and location)* _Prison MD_

**REASON FOR ADMISSION** *(Diagnosis, Procedure, etc.)* _Fall_

## DISCHARGE DIAGNOSIS

| | |
|---|---|
| **Principal Diagnosis** | Cerebral venous thrombosis & hemorrhagic venous infarct, subarachnoid hemorrh |
| **Other Diagnosis** | A. Fib, HTN |
| **Major Diagnostic Procedure** | |
| **Surgical Procedures** | |

## DISCHARGE STATUS:
☐ Home                    ☐ Skilled Nursing Facility or Intermediate Care Facility (Name)_____
☐ Home Health Service_____  ☑ Other _Rehab in Prison_

Diet ☑ Regular   ☐ Restrictions _____
Activity: ☑ As Tolerated   ☐ Restrictions _____
Follow Up Labs: _INR Daily until 2.0-3.0_ _____ Date ____
Lab results to: *(name, contact info)* _____

| **Follow-Up Appointments** | | | | |
|---|---|---|---|---|
| Provider | Clinic Name | Date | Time | Phone # |
| eval on MRI Dr. Potter Discharge Clinic | Neurology | ___ | ___ | 585-6387 |
| | | | | |
| | | | | |

### TREATMENTS/SUPPLIES/ADDITIONAL ORDERS
☑ PT Eval and Treat  ☑ OT Eval and Treat  ☑ Speech Eval and Treat
☐ Foley catheter *(remove, continue, etc.)* _____
☐ Finger-Stick Glucose *(frequency)* _____
☑ House Physician to Follow  ☐ PCP *(name)* _____ to follow
☐ Wound care _____
Oxygen *(flow rate)*_____ *if new order document room air sat:* _____

If you should have any of the following symptoms, call your doctor IMMEDIATELY:
_unable to speak or move, passing out, chest pain, shortness of breath_

_Brain MRI in one month with contrast to evaluate for underlying tumor, prior to DC appointment._

### OTHER PATIENT INFORMATION:
☐ Additional Education Materials: *(RN fills out)* _____

I have been informed and have received the above discharge instructions, information, and separate medication list. I have no questions regarding them.   Patient/Significant Other _____ Date ____
_all information given to the officer._

I have reviewed the above with the patient/significant others who demonstrate understanding. Pt instructed to bring discharge instructions and med list to next clinic appointment.  These have been sent to the next provider of care.
RN Signature _P. J. Badilla_ ___ Date _7/22/08_

**CERTIFICATION MEDICARE PATIENTS ONLY:** ☐ Non-Skilled Care Does Not Require Certification ☐ Home Health Services ☐ Skilled Nursing Placement
I certify that post-hospital skilled nursing services are required to be given on an inpatient basis or home health services are required because of the above named patient's need for skilled nursing care on a continuing basis for the condition(s) for which he/she was receiving inpatient hospital services prior to his/her transfer or discharge to the facility.

Provider's Signature: _____  Date: ____

UUH-NS 1004/R8-07          _Dresher seen_ _7/22/08 10AM_

University of Utah Hospitals and Clinics
Salt Lake City, UT

## Discharge Summary                    MAGUIRE, BRIAN EDWARD - 02430544

Result Type:          Discharge Summary
Service Date:         22 July 2008 00:01
Result Status:        Final
Result Title:         Discharge Summary
Authored By:          Poetter , Vivian on 02 September 2008 10:28
Electronically Signed By: Smith, A Gordon on 04 September 2008 09:41

**Discharge Summary**
34949DISCHARGE SUMMARY

PATIENT NAME:    MAGUIRE, BRIAN E
MRN:             2430544
ATTENDING PHYSICIAN:   Albert Gordon Smith, M.D.
DATE ADMITTED:    07/16/2008
DATE DISCHARGED:   07/22/2008

REASON FOR ADMISSION: Fall with possible seizure and hemorrhagic stroke.

DISCHARGE DIAGNOSIS: Cerebral venous thrombosis with hemorrhagic venous
infarct and subarachnoid hemorrhage.

OTHER DIAGNOSES: Atrial fibrillation, hypertension and seizures.

HISTORY OF PRESENT ILLNESS: For complete details, please see the history
and physical dated 07/16/08. In brief, this is a 59-year-old male,
currently an inmate at the state prison who experienced a ground-level
fall, possibly a seizure and possibly hit his head at the same time. He
was found in an unknown amount of time after this event occurred and was
taken by EMS to Alta View Hospital. There, he was noted to have
left-sided weakness, left-sided facial droop and upper extremity greater
than lower extremity left-sided limb weakness. On imaging studies, a head
CT without contrast showed a right parietal venous thrombosis. An
MRI of the brain with and without contrast showed a right superficial
venous thrombosis with associated posterior frontal and anterior parietal
hemorrhagic venous infarct and a trace subarachnoid blood. Head MRA
showed a right parietal superficial cortical venous thrombosis with a
patent superior sagittal sinus. Repeat head CT on 07/17/08 showed a
slight increase in the size of the right frontoparietal intraparenchymal
hemorrhage. Stroke labs were performed including the following,
coagulation labs showed an initial INR of 1.2 and PTT of 25. D-dimer on
day 2 of admission was 13.5. He was found to be heterozygous for factor V
Leiden by PCR. At discharge, he was continued on Coumadin, Lovenox and
Keppra which were started during his hospitalization. On discharge, Mr.
Maguire had improved some. He still had dysarthria and left facial droop.
It was difficult to assess his abilities on physical therapy because of
the fact that he was shackled with arm and leg shackles and needed
supervision of two officers any time he was taken off the shackles, but

Printed by:   Dhaliwal, Ravinderjit K                            Page 1 of 2
Printed on:   3/26/2009 14:21                                    (Continued)

University of Utah Hospitals and Clinics
Salt Lake City, UT

## Discharge Summary                    MAGUIRE, BRIAN EDWARD - 02430544

the physical therapy report from 07/22/08 indicates that he was able to go
from sitting to standing with minimal assist, walk 25 feet with the
moderate assist of 2 people. He was independent on static sitting and
could do left upper extremity exercises sitting and standing. He was
thought to be very motivated towards meeting his goals and the plan was
for him to transfer back to the prison and participate in rehab physical,
OT and speech therapy there.

Problem #2. Epilepsy. The patient has a history of seizures. He was
started on Keppra during his hospitalization at 1000 mg orally b.i.d.

OTHER PROBLEMS: Anticoagulation. Although there was a small amount of
bleeding associated with the stroke, the primary cause was a venous
thrombosis. He was anticoagulated with heparin and started on Coumadin 5
mg orally once daily at night. On discharge, he will be bridged with
Lovenox 70 mg subcutaneous q.12h. until his INR is in the therapeutic
range between 2 and 3. Mr. Maguire will follow up with the prison MD on
his INR and medication adjustments. He will follow up in Neurology
Discharge Clinic in September, and he will follow up with a brain _____
prior to that appointment.

DISCHARGE MEDICATIONS: Amitriptyline 50 mg orally b.i.d., cyclobenzaprine
10 mg orally b.i.d., docusate 100 mg orally b.i.d., senna 17.2 mg orally
b.i.d., ranitidine 150 mg orally b.i.d., Tylenol 650 mg orally q. 6h. as
needed for headaches, dexamethasone taper 4 mg orally b.i.d. x1 day, then
4 mg orally daily x2 days, then 2 mg orally daily x2 days, and then
discontinue dexamethasone. Levetiracetam 1000 mg orally b.i.d., Coumadin
5 mg orally once daily at night, and Lovenox 70 mg subcutaneously q. 12h.
until INR is therapeutic between 2 and 3.

34949/87127
D: 09/02/2008 10:28:16
T: 09/02/2008 20:56:05
VP/5654030

CC:

U.M.C.   M.R.I. Analysis

B

08/28/2008 08:27 FAX                                                    ☑002/003

CONSULTATION
UNIVERSITY OF UTAH HOSPITALS AND CLINICS
SALT LAKE CITY, UTAH 84132

USP 1288,
of 10450

PATIENT LOC: AC18                          MRN:  02430544
VISIT NUMBER: 142862267                    PAT NAME: BRIAN EDWARD MAGUIRE
                                           DOB: Aug-25-1948  SEX: M

ACC #: 3294802                      REQUESTING MD: RICHARD GARDEN, MD
COMPLETED: Aug-27-2008 AT: 0800     ATTENDING MD: STEVEN RICHARD EDGLEY, MD

EXAM: MRI BRAIN W/WO CONTRAST BSP II /15ml parmag con

Diagnosis:                                DISTRIBUTION DATE:Aug-27-2008
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INDICATION: STROKE LIKE SYMPTOMS, NUMBNESS, MENTAL CONFUSION
Additional history includes 60-year-old male with hemorrhagic
infarction related to cortical venous thrombosis.

EXAMINATION: Noncontrasted and contrasted  MRI of the brain obtained
at 08/27/2008.

COMPARISON: CT 07/17/2008, MRI of 07/16/2008.

TECHNIQUE:
MRI of the brain was performed using the following sequences: Sagittal
T1, axial T1, axial FLAIR, axial T2, axial gradient imaging, axial
diffusion weighted imaging,  coronal and axial T1 post gadolinium.

FINDINGS:
The previously noted right frontoparietal hematoma is smaller in size
when compared to previous measuring 4.6 cm x 1.8 cm. It involves the
pre and post central gyri. The degree of surrounding FLAIR signal is
also reduced when compared to previous. The signal characteristics of
the hemorrhage are compatible with a subacute hematoma. Some
peripheral hemosiderin staining is noted which demonstrates
susceptibility artifact on gradient sequences. The previously noted
serpentine region of  susceptibility artifact related to the
thrombosed cortical vein is not well appreciated on the current
examination and has likely recannulated  Associated mass effect noted
by regional sulcal attenuation has improved. The midline is central
and the basal cisterns are patent. No abnormal parenchymal,
leptomeningeal or dural enhancement is identified. The orbits,
paranasal sinuses and mastoid air cells are normal.

IMPRESSION:
EVOLUTION OF RIGHT FRONTAL AND PARIETAL HEMORRHAGIC INFARCTION RELATED
TO CORTICAL VEIN THROMBOSIS WITH REDUCED MASS EFFECT. NO NEW FEATURES
ARE IDENTIFIED.

APPROVED BY:
Tasha Ellchuk, MD (FELLOW)  /signed by/ Tasha Ellchuk, MD (FELLOW)
Lubdha Shah, MD  /signed by/ Lubdha Shah, MD

 I have personally reviewed the images for this examination and agree
 with the report transcribed.
by Lubdha Shah, MD


TRANSCRIBED BY: POWERSCRIBE INTERFACE
EDITED BY: POWERSCRIBE INTERFACE

Denial of Prelitigation Review

C

DEPARTMENT OF COMMERCE
Heber M. Wells Building
160 East 300 South, Box 146741
Salt Lake City, Utah 84114-6741
Telephone: (801) 530-6990 or (801) 530-6945
FAX: (801) 530-6511

### BEFORE THE DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING
### DEPARTMENT OF COMMERCE, STATE OF UTAH

**BRIAN MAGUIRE**

      Petitioner(s)

-vs-                                                    **DENIAL OF REQUEST FOR**
                                             **PRELITIGATION HEARING**

**DR. RICHARD GARDEN, DR. BRUCE BURNHAM**

      Respondent(s),

The Division of Occupational and Professional Licensing ("Division") hereby denies the Petitioner's Request for Prelitigation Panel Review ("Request") filed with the Division on July 27, 2009 for the reasons set forth herein. The denial restarts the running of the applicable statute of limitations until an appropriate Request is filed with the Division. An appropriate Request tolls the statute of limitations until 60 days following the Division's issuance of an opinion by the Prelitigation panel.

The Division finds that the Request is defective for the reason(s) selected below:

[ ]    The Request was not filed with the Division within 60 days of the Notice of Intent to Commence Action ("Notice") as required by Utah Code Annotated §§ 78B-3-416(2)(a) (1994 Cum. Supp.).

[ ]    The Request was not mailed to all health care providers named in the Notice and Request as required by Utah Code Annotated §§ 78B-3-416(2)(b) (1994 Cum. Supp.).

[ ]    The Request did not have a certificate of service attached as required by the Utah Administrative Code, Prelitigation Panel Review Rules, R156-78B-7(3). A "cc" to the respondent does not satisfy that requirement.

[ X ]    Proof of Service of the Notice of Intent pursuant to §§78B-3-412(3)

Dated this _28_ day of July, 2009.

                                      Adele Bancroft
                                      Prelitigation Coordinator

Grievance Response: STRoke evenT

D



# Utah Department of Corrections

**TOM PATTERSON**
Executive Director

**MIKE HADDON**
Deputy Director

## Hearing Office

(Level Three Received/Date Stamped:  6 April 2009)

1 June 2009

Inmate Brian Maguire, USP # 12887, Offender # 104501
Utah State Prison, Oquirrh 5 HH 12

Inter-facility

RE:  <u>**Level Three Grievance Number 990871090**</u>

I have reviewed your grievance and other relevant information. There is no further administrative review available. **If you are dissatisfied with this response and wish to take further action, this grievance answer will serve as evidence you have exhausted the administrative remedy process.  Your only recourse is to seek a judicial remedy.**

This level three response is late and I apologize for that. I have been ill for several weeks and have fallen behind. Policy has a built in remedy that allows you to advance to the next level in the process if you do not receive a timely answer at any grievance level. In this case, the next level would be to seek a judicial remedy. I am still providing a level three response below. The information provided may be useful if you have filed or plan to file a judicial action.

You bring your grievance to level three complaining that on January 28, 2009, Clinical Services charged you medical co-pay fees in the amount of $12.96 for treatment of a disability you suffered as a result of "screw-ups" by medical staff, security staff and an ambulance service.  You request no retaliation from medical staff or others for complaining about how you were treated on or about July 2, 2008, no further medical co-pay fees be deducted from your account arising from your disability, immediate acceptance into the Con-Quest substance abuse program, and a copy of this grievance returned with the response. Your requested remedies are 1) no retaliation; 2) no money be subtracted from your inmate account for any medical services provided since your return to prison July 2, 2008; 3) you want to be admitted to the conquest program; and 4) you wanted copies of all 4 pages when your initial presentation is answered.

I concur with the level one response.  Upon your arrival you stated to PA Abbott that you were concerned about withdrawal symptoms from alcohol abuse.  You were started on treatment for withdrawal and then moved to the Infirmary for inpatient care and observation until you were discharged from the Infirmary on July 14, 2008. You submitted an Inmate Care Request (ICR) on July 15, 2008, stating your concerns, which prompted the med tech to have you see a provider immediately after reading it. PA Abbott evaluated you and gave you the medication which, in his professional opinion, was appropriate for your symptoms and recent history.  You were also seen the morning of July 16, 2008 by a med tech who had you seen immediately and taken to the Infirmary.  You stated that you were having seizure, (which you claim was inaccurate), but at any rate, you were having problems but you also indicated that you were conscious and lucid during the entire event.  You were seen by Dr. Tubbs, and were sent to the hospital by ambulance.

You complain of an error in your transport.  Ambulances, with EMS trained attendants, pick up patients at the prison just as they would if the patient was a member of the community.  Once you were in their vehicle, you were their patient.  The EMS providers and medical control chose to divert you to the nearest hospital, which at that time was Alta View Hospital.  You were cared for by them, not prison medical people, and then forwarded to the University of Utah.  Once stabilized, you were returned to prison care.

I have reviewed you records, and there is no indication that you were not given appropriate and adequate medical care.  There is also no indication of retaliation by medical personnel.  Retaliation is prohibited by policy and all staff are trained in policy issues and expected to comply with policy.  Charging inmates co-pay fees is not retaliation; it is covered by Utah State Statute, and you will be charged co-payments just like any other inmate.  If you believe there were errors in determining the amount of co-pay fees you were charged, you may send your concerns to the medical co-pay administrator.  Clinical Services does not determine admission to custody programs.  Inmates do not have a right to be admitted to any particular program; entrance into specific programs is a privilege, not a right; you will have to earn admission to the Con-Quest Program.  A copy of your appeal to me is enclosed with this response.  Your other grievance remedies are denied.

*Tom Anderson*
Hearing Office,
Utah Department of Corrections

Grievance Response: Dr. Burnham, Medication

E



**TOM PATTERSON**
Executive Director

**MIKE HADDON**
Deputy Director

**ROBYN WILLIAMS**
Deputy Director

# Utah Department of Corrections
### Administrative Services Bureau

**GREG PEAY**
Director

## Hearing Office

(Level Three Received/Date Stamped:  (1 September 2009)               28 September 2009

Inmate Brian Maguire, USP # 12887, Offender # 104501
CUCF, CF  FF  03

Inter-facility

RE:  **Level Three Grievance Number 99G-08-72370**

I have reviewed your grievance and other relevant information. There is no further administrative review available. **If you are dissatisfied with this response and wish to take further action, this grievance answer will serve as evidence you have exhausted the administrative remedy process.  Your only recourse is to seek a judicial remedy.**

You bring your grievance to level three complaining that you had a stroke that caused some damage which was still causing you severe pain.  Dr. Burnham explained that was "old business" and discontinued your prescription for Tramadol. You feel Dr. Burnham was indifferent to your medical needs, and was indicating his disdain for you and your needs.  Your requested remedy is to get your prescription for Tramadol back; to be provided adequate medical treatment without having your manliness challenged by medical staff; and full exhaustion of your administrative remedies.

I concur with the level one and level two responses to your grievance.  You have seen Dr. Burnham on several occasions.  Dr. Burnham was concerned with the way you were taking your drugs.  For instance, you were taking less than half the prescribed dosage of Coumadin.  In your grievance to me you state "I no longer take any Coumadin at all; nor the B.P. medication; nor the dummy pills (Elavil) that I was given to shut me up … or down as the case may be."

Dr. Burnham offered you Elavil, which you are apparently refusing.  Elavil is frequently prescribed for chronic pain.  A fellow I work with had chronic, and painful, back pain and had been living with it for years.  He is retired now from the military, but tells me he was hospitalized for his back pain several times while in the military and he was prescribed Elavil.  He has been on that drug for over 20 years now and is doing well.  He told me that Elavil did make him drowsy and feeling foggy when he woke up for about three to four weeks until his body got used to it, but it helps him a great deal.

Doctors, like any other professionals, can have legitimate disagreements about appropriate professional courses of action to take in individual cases.  There is nothing in the record that suggests to me that medical staff is being deliberately indifferent to your medical situation, or have not provided adequate and appropriate medical care. If you do not take the medication the doctors prescribe as directed, it is no wonder they feel hesitant to give you other medications.  When you have demonstrated to them that you will not take your medications as prescribed, why would you expect them to give you stronger pain medications?

Your grievance remedies are denied.

*Tom Anderson*
Hearing Office,
Utah Department of Corrections

Tracking # 09-355

**GRAMA Classification - PRIVATE**

14717 South Minuteman Drive, Draper, UT 84020 • telephone (801) 545-5503 • facsimile (801) 545-5762

Grievance Response: Medical Co-pay

F



# Utah Department of Corrections

### Administrative Services Bureau

TOM PATTERSON
Executive Director

MIKE HADDON
Deputy Director

ROBYN WILLIAMS
Deputy Director

GREG PEAY
Director

## Hearing Office

(Level Three Received/Date Stamped: (01 September 2009)                    28 September 2009

Inmate Brian Maguire, USP # 12887, Offender # 104501
CUCF, CF FF 03

Inter-facility

### RE:  **Level Three Grievance Number 99G-08-72369**

I have reviewed your grievance and other relevant information. There is no further administrative review available. **If you are dissatisfied with this response and wish to take further action, this grievance answer will serve as evidence you have exhausted the administrative remedy process.  Your only recourse is to seek a judicial remedy.**

You bring your grievance to level three complaining that medical co-pay is taking more than 60% of one credit from your inmate account.  Your requested remedy is for medical co-pay to restrain themselves to the 60% (per credit) that is provided for in policy and procedure.  You want $2.00 back, or a two dollar credit toward the 60% from your next credit.

I concur with the level one and level two responses to your grievance.  The level two response spells out the process quite well.  If you have sufficient money in your account to pay for current medical co-pay fees, money from your account will be taken to pay those fees in full.  If there is not enough in your account to pay for your current medical co-payment fees, 60% of the money which comes into your account will be taken to pay for those that are due and owing, or what Mr. Coulter refers to as "owed debt." It is very possible to have a month where money is deducted for current fees to pay them in full, and in that same month 60% of what is left of your account to be deducted to pay for those co-payment fees which are due and owing.

The Co-Pay Administrator deducted the correct amount.  There will be no money returned to neither you nor will you be given credit for future charges or debts.

Your grievance remedies are denied.

*Tom Anderson*
Hearing Office,
Utah Department of Corrections

Tracking # 09-356

## RELEASED GRAMA

### GRAMA Classification - PRIVATE

14717 South Minuteman Drive, Draper, UT 84020 • telephone (801) 545-5503 • facsimile (801) 545-5702

Request For volunTeere AssisTanT, A. D. A.

G



**State of Utah**

GARY R. HERBERT
*Governor*

GREG BELL
*Lieutenant Governor*

# Utah Department of Corrections
## DIVISION OF INSTITUTIONAL OPERATIONS

THOMAS E. PATTERSON
*Executive Director*

MIKE HADDON
*Deputy Director*

ROBYN WILLIAMS
*Deputy Director*

LOWELL CLARK
*Division Director*

November 9, 2009

Inmate Brian Maguire, # 104501
Central Utah Correctional Facility

Dear Inmate Maguire,

The ADA review committee recently reviewed your request for an ADA Assistant to help you with physical therapy exercises.  CUCF Medical staff provided you with the equipment necessary to complete your exercises on your own.  Your request for an assistant is unreasonable at this time.

As always, please do not hesitate to contact me if you have any questions or concerns.

Sincerely,

Angie Stevens
DIO ADA Coordinator

RECEIVED

NOV 2 5 2009

DIO RECORDS

## RECORDS REQUEST

(1) Requester's Name: _Brian Maguire_   Date: _11-19-09_

Agency Name: _Prisoner_   Prison Number: _12887/10450)_
(if inmate)

Mailing Address: _CUCF_   Daytime Phone #: _____

_FF 03_
(Housing unit if inmate)

**(2)**   In accordance with the Governmental Records Access Management Act, I am requesting copies of the following record(s):

1.   Indicate complete name and prison number (if applicable) of the *subject of the information* requested _Brian Maguire 12887/10450)_ _ADA request for ADA Assistant for Physical Rehab._

2.   Indicate the Utah Department of Corrections division, facility, or program originating the information requested _ADA Review Committee / Angie Stevens_.

3.   Indicate the approximate year, month, and day the information requested was entered into the record _11-9-09_.

4.   Indicate, with as much detail as possible, the nature of the information requested _Please provide me with specific information identifying the specific equipment CUCF Medical has provided to me in order for me to complete therapy? Please identify_ (use additional pages as needed) _who provides (provided) the information to ADA Coordinator?_

**(3)**   **LEGAL AUTHORITY TO RECEIVE THE INFORMATION**
(evidence must be provided)

1. [ ] I am requesting information which I believe to be <u>Public</u>.
2. [X] I am the <u>subject</u> of the record being requested.
3. [ ] I am the <u>person who provided the information</u>.
4. [ ] I am the <u>parent or legal guardian</u> of the subject of the information.
5. [ ] I have a <u>Power of Attorney</u> from the subject of the information.
6. [ ] I have a <u>Notarized Release</u> from the subject of the information.
7. [ ] I have a <u>Court Order</u> from a court of competent jurisdiction.

**(4)**   If requested records are classified **"Controlled"**, the requester, who is a person other than the inmate, shall sign the following:

**ACKNOWLEDGMENT**

I hereby acknowledge that I am a physician, psychologist, certified social worker, insurance provider or agent, or government public health agency and that I will not disclose controlled information to any person, including the subject of the records, except in response to a lawful order of the State Records Committee or the district court.

_____   _____
(signature)   (date)

**(5)**                    **AFFIDAVIT**

[ ]   I am requesting copies of records believed by me to be maintained by the
Utah Department of Corrections.  I hereby request that any copies of records
requested by me be provided without charge.  This request is based on GRAMA,
UCA §63G-2-203(4)(c).  I declare that my legal rights are implicated by the
record(s) requested by me and that I am indigent in accordance with FDr15,
Indigent Status, as of the date of this records request.

---

**(6)**   I have been informed there may be costs for copying and/or
researching the information I am requesting.

1.   I certify that the information provided within this document is true
and correct.

Dated this ___2-19___ day of              **FOR INMATE REQUESTS:**
                                          (does not need to be notarized)
___November___ , 20 09

_Brian Maawil_                            _____
(Requester's Signature)                   (Signature of Caseworker)


2.  For requests directing records to be released **to persons other than
the requesting inmate** needs to be notarized.


In the County of _____, State of Utah, subscribed and sworn to
before me this _____ day of _____ 20___.


_____
NOTARY PUBLIC
Residing at: _____

Commission expires: _____

---

**(7)**                    **DIO USE ONLY**

Date request received: _____ By:

Date request released: _____ By:

Date request denied: _____ By:

Copying fee(s): _____ Fee(s) waived: _____ (reason)

---

**INMATE REQUESTS:**          **DIVISIONS OTHER THAN DIO**    **DIO REQUESTS** send to:
Obtain form from Case         **& PUBLIC REQUESTS** send to:  Utah State Prison
  Worker                      Department of Corrections       DIO Records Officer
**Send completed form to:**   Bureau of Records               DIO Records
Facility which maintains      14717 S. Minuteman Drive        P. O. Box 250
information being             Draper, Utah 84020              Draper, UT  84020
requested.

RECEIVED
DEC 0 2 2009
CENTRAL UTAH CORRECTIONAL
FACILITIES
MEDICAL UNIT

# DIVISION OF INSTITUTIONAL OPERATIONS
# CENTRAL UTAH CORRECTIONAL FACILITY
# BUREAU OF MEDICAL SERVICES
### REJECTION MEMORANDUM

TO: Brian Maguire        OFFENDER # 104501

ADDRESS: F F 03

FROM: Medical Clerical Services

DATE: December 14, 2009.

SUBJECT:     Rejection of Records Request

This office is rejecting your request of information for one or more of the following reasons:

1. ____        You did not submit an authorized Records Request form. (Form is enclosed.)

2. ____        Your Record Request form is not completed correctly:

                         a. _____        You did not sign your Record Request.

                         b. ____        Your signature was not witnessed by your Case
                                     Worker in section six as required.

                         c. ____        You have not been specific regarding which records. You
                                     must list each record individually, accurately identify the
                                     documents, and specify dates.

3. _x_        You are requesting copies and did not attach a Money Transfer Form (MTF) to
                  pay for the copies.
                         a. _x_ Your MTF must be made out to the UTAH STATE PRISON, leave
                                      the amount blank (it will be completed by our office based
                                      on the number of pages that are copied for you, you must
                                      sign the form and have it witnessed, or if you are indigent,
                                      please check-mark the Affidavit Section (#5) on the reverse
                                      side of the Records Request form.

4. _x_    Other:     a._x_ The information you are requesting is not a medical issue. *You*
                                  *may wish to speak with your caseworker. This may be an ADA*
                                  *issue.*



# Utah Department of Corrections
## DIVISION OF INSTITUTIONAL OPERATIONS

**State of Utah**

GARY R. HERBERT
*Governor*

GREG BELL
*Lieutenant Governor*

**THOMAS E. PATTERSON**
*Executive Director*

**MIKE HADDON**
*Deputy Director*

**ROBYN WILLIAMS**
*Deputy Director*

**LOWELL CLARK**
*Division Director*

December 29, 2009

Inmate Brian Maguire, # 104501
Central Utah Correctional Facility

Dear Inmate Maguire,

I have received your letter dated December 18, 2009 regarding a GRAMA Request submitted on November 19, 2009.  GRAMA Requests do not come through my office and I have not seen this request.  You may submit another GRAMA request and note on the form that the information you are requesting is generated by the ADA Review Committee and that I should be contacted to acquire the information.

You give information in your most recent letter that you are too weak to manipulate your body weight.  This information has not been documented by medical staff, please submit a Health Care Request and request that a Functional Limitation Analysis be conducted.  Please note that you will be subject to all co-pays for this visit.  Once medical documentation is provided, the ADA Review Committee will again, review your request for an ADA Assistant to help you with your physical therapy exercises.

Additionally, there is no record in O-Track that indicates you were allowed to possess a sling or additional ACE bandages while housed at Draper Site.  If you feel these are items that you require, you may request to be seen by medical by submitting a Health Care Request as outlined in UDC Policy FDr18/03.03 (B), Access to Sick Call and request a medical clearance.

As always, please feel free to continue to contact me regarding your ADA Requests.

Sincerely,

Angie Stevens
DIO ADA Coordinator

Request Access To Word processor , A. D. A.

H



**State of Utah**

JON M. HUNTSMAN, JR.
*Governor*

GARY R. HERBERT
*Lieutenant Governor*

**Department of Corrections**

THOMAS E. PATTERSON
*Executive Director*

ROBYN WILLIAMS
*Deputy Director, Operations*

LOWELL CLARK
*Director, Division of Institutional Operations*

September 2, 2009

Inmate Brian Maguire, #36723
Central Utah Correctional Facility

Dear Inmate Maguire,

The ADA review committee recently reviewed your request to be allowed access to a word processor and printer to complete necessary paperwork to the courts for your appeal and pending divorce. Information that has been provided by the housing unit indicates you have previously been restricted to such devices because you were completing legal work for other inmates, which is a direct violation of UDC policy. Additionally, you have a dominant right hand that appears to be undamaged and functional. As handwritten documents are accepted by the courts, you are not being denied access. After a review of the available information, the ADA Review Committee believes the accommodation you have requested is not reasonable at this time.

While an accommodation under the ADA cannot be made at this time, if there are any concerns remaining that have not been addressed by Clinical Services, please submit a Health Care Request as outlined in policy FDr18/03.03 (B), Access to Sick Call, or contact us and we will be happy to consider any additional information you wish to provide. If you feel your needs are not being met, you may submit an Inmate Grievance as outlined in UDC Policy FDr02. Please do not hesitate to contact me if you have any questions or concerns.

Sincerely,

Angie Stevens
DIO ADA Coordinator

14717 South Minuteman Drive, Draper, UT 84020 • telephone (801) 545-5803 • facsimile (801) 545-5805

*Indigent*

**RECORDS REQUEST**

**(1)** Requester's Name: *Brian Maguire*     Date: *9-24-09*

Agency Name: *ADA Review Committee*  Prison Number: *12887 / 104901*
(if inmate)

Mailing Address: *14717 So. Minute Man Drive*
*Draper, Ut. 84020*     Daytime Phone #: _____
*CUCF - CF FF 03*
(Housing unit if inmate)

**RECEIVED**
**OCT 14 2009**
**DIO RECORDS**

**(2)** In accordance with the Governmental Records Access Management Act, I am requesting copies of the following record(s):

1. Indicate complete name and prison number (if applicable) of the *subject of the information* requested _____
   *Brian Maguire #12887 (or... 36723)*.

2. Indicate the Utah Department of Corrections division, facility, or program originating the information requested
   *ADA Review Committee, Angie Stevens*.

3. Indicate the approximate year, month, and day the information requested was entered into the record *Approx 9-2-09*.

4. Indicate, with as much detail as possible, the nature of the information requested *Record of subject's Restriction From word processor for doing other inmates legal work, Copies of Record, Who provided the information?, In what form did the information Appear. (Referring to letter from*
   (use additional pages as needed)
   *Angie Stevens To me dated 9-2-09.)*

**(3)**     **LEGAL AUTHORITY TO RECEIVE THE INFORMATION**
(evidence must be provided)

1. [ ] I am requesting information which I believe to be <u>Public</u>.
2. [X] I am the <u>subject</u> of the record being requested.
3. [ ] I am the <u>person</u> who provided the <u>information</u>.
4. [ ] I am the <u>parent or legal guardian</u> of the subject of the information.
5. [ ] I have a <u>Power of Attorney</u> from the subject of the information.
6. [ ] I have a <u>Notarized Release</u> from the subject of the information.
7. [ ] I have a <u>Court Order</u> from a court of competent jurisdiction.

**(4)** If requested records are classified **"Controlled"**, the requester, who is a person other than the inmate, shall sign the following:

**ACKNOWLEDGMENT**

I hereby acknowledge that I am a physician, psychologist, certified social worker, insurance provider or agent, or government public health agency and that I will not disclose controlled information to any person, including the subject of the records, except in response to a lawful order of the State Records Committee or the district court.

_____     _____
(signature)                           (date)

*Sent inmate letter 10/29/09*

**(5)**                                  **AFFIDAVIT**

[ ]  I am requesting copies of records believed by me to be maintained by the
Utah Department of Corrections.  I hereby request that any copies of records
requested by me be provided without charge.  This request is based on GRAMA,
UCA §63G-2-203(4)(c).  I declare that my legal rights are implicated by the
record(s) requested by me and that I am indigent in accordance with FDr15,
Indigent Status, as of the date of this records request.

---

**(6)**   I have been informed there may be costs for copying and/or
researching the information I am requesting.

1.   I certify that the information provided within this document is true
and correct.

Dated this _**24**_ day of        **FOR INMATE REQUESTS:**
                                   (does not need to be notarized)
_September_ , 20 _09_

_Brian Maguire_                    _Heidi Johnson_
(Requester's Signature)            (Signature of Caseworker)


2.  For requests directing records to be released **to persons other than
the requesting inmate** needs to be notarized.


In the County of _____, State of Utah, subscribed and sworn to
before me this _____ day of _____ 20___.


_____
NOTARY PUBLIC
Residing at: _____

Commission expires: _____

---

**(7)**                              **DIO USE ONLY**

Date request received: _____ By:

Date request released: _____ By:

Date request denied: _____ By:

Copying fee(s): _____ Fee(s) waived: _____ (reason)

---

**INMATE REQUESTS:**
Obtain form from Case
  Worker
**Send completed form to:**
Facility which maintains
information being
requested.

**DIVISIONS OTHER THAN DIO
& PUBLIC REQUESTS** send to:
Department of Corrections
Bureau of Records
14717 S. Minuteman Drive
Draper, Utah 84020

**DIO REQUESTS** send to:
Utah State Prison
DIO Records Officer
DIO Records
P. O. Box 250
Draper, UT  84020



# Utah Department of Corrections
## DIVISION OF INSTITUTIONAL OPERATIONS

**State of Utah**

GARY R. HERBERT
*Governor*

GREG BELL
*Lieutenant Governor*

THOMAS E. PATTERSON
*Executive Director*

MIKE HADDON
*Deputy Director*

ROBYN WILLIAMS
*Deputy Director*

LOWELL CLARK
*Division Director*

October 14, 2009


Inmate Brian Maguire, # 12287
Central Utah Correctional Facility-Fir


Dear Inmate Maguire,

Recently you submitted a GRAMA Request for copies of an ADA Accommodation Request Form you submitted in June 2009. During our routine review, the ADA Review Committee determined that a typewriter would not be a reasonable accommodation because your dominant right hand is not affected and you are still able to present legible documents to the courts, Board of Pardons, etc. We also received information that you have completed legal work for other inmates in the past, which is a direct violation of UDC Policy and creates a security threat. It was later brought to our attention that this information is incorrect. I apologize for any inconvenience you may have experienced due to this error.

At this time, the ADA Review Committee has decided to review your request again, without considering the incorrect information. Our next meeting is scheduled for October 27, 2009. You will receive a letter to notify of the outcome of our review after that date.

Once again I apologize for any inconvenience. If you have any additional information you would like to provide to the ADA Review Committee, you may send it to my attention.


Sincerely,


Angie Stevens
DIO ADA Coordinator


CC:   John Irons, Deputy Warden-CUCF
      Mary Ann Reding, Captain-DIO Records

14717 South Minuteman Drive, Draper, UT 84020 • telephone (801) 545-5803 • facsimile (801) 545-5805



**DIO Records Office**
**Utah State Prison**

To:           Brian Maguire OFF#104501

From:         Lisa Neilson, DIO Records

Subject:      Your Records Request

Date:         October 29, 2009

Mr. Maguire,

There are no records to provide in response to your request. Ms. Stevens provided a
sufficient explanation to cover this request and as such there is nothing more that this
office can add as a response.

Thank you,

Lisa Neilson
DIO Records
Utah State Prison



**State of Utah**

GARY R. HERBERT
*Governor*

GREG BELL
*Lieutenant Governor*

# Utah Department of Corrections
## DIVISION OF INSTITUTIONAL OPERATIONS

THOMAS E. PATTERSON
*Executive Director*

MIKE HADDON
*Deputy Director*

ROBYN WILLIAMS
*Deputy Director*

LOWELL CLARK
*Division Director*

November 9, 2009

Inmate Brian Maguire, # 104501
Central Utah Correctional Facility

Dear Inmate Maguire,

The ADA review committee recently re-reviewed your request for a typewriter. We were not presented with additional information that defined any subjective limitations or a change in your condition since our previous review. If you would like to further pursue obtaining a typewriter via ADA please provide with us medical documentation which details a change in your condition. Until we have received further information we will continue to stand on our previous recommendation of not approving the typewriter based on your right hand being undamaged, functional and your dominant writing hand. Since the courts accept hand written documents we feel that you are adequately receiving access to them through written correspondence.

Please do not hesitate to contact me if you have any questions or concerns.

Sincerely,

Angie Stevens
DIO ADA Coordinator

14717 South Minuteman Drive, Draper, UT 84020 • telephone (801) 545-5803• facsimile (801) 545-5805