IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRIAN E. MAGUIRE,<br><br>                              Plaintiff,<br><br>v.<br><br>THOMAS E. PATTERSON et al.,<br><br>                              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:10-cv-00626-CW<br><br>Judge Clark Waddoups |

        Plaintiff Brian Maguire suffered a severe stroke while incarcerated at the Utah State

Prison. He filed this civil rights action alleging numerous prison officials violated his

constitutional rights by acting with deliberate indifference to his serious medical needs. (Dkt. No.

31); (Dkt. No. 61). The defendants have now filed a renewed motion for summary judgment

(Dkt. No. 175),[1] and the court heard oral argument on that motion. After carefully considering

the parties' briefs and oral arguments, the court now GRANTS in part and DENIES in part the

defendants' renewed motion for summary judgment.

## BACKGROUND[2]

        Maguire's medical treatment at the prison began on July 3, 2008 when Chris Abbott, a

physician's assistant, performed an intake examination to determine Maguire's general physical

---

[1] Some of the defendants previously filed a motion for summary judgment. (Dkt. No. 108). The court denied that motion, but allowed the defendants to file a renewed motion once all of the defendants had been served and a *Martinez* report had been filed. (Dkt. No. 141).

[2] The court recites the facts of this case—including those facts that are genuinely in dispute—in the light most favorable to Maguire. *See Macon v. United Parcel Service, Inc.*, 743 F.3d 708, 712 (10th Cir. 2014) (at the summary judgment stage, the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party").

condition. (Dkt. No. 185-1, p. 4).[3] At that time, Maguire informed Abbott he was on a methadone treatment program for his history of opiate addiction. (*Id.*). Because methadone is a highly abused narcotic that can present safety concerns to inmates when prescribed to them, Abbott told Maguire that methadone is only prescribed to pregnant women and others in very limited circumstances. (*See* Dkt. No. 180-1, p. 51); (Dkt. No. 185-1, p. 4). Nevertheless, Maguire requested he be placed on a methadone-tapering regimen. (Dkt. No. 185-1, p. 4). Abbott called his supervisor, Dr. Richard Garden, who confirmed Maguire should not be given methadone. (*Id.*). Maguire alleges that during this conversation, Garden told Abbott that even though methadone withdrawals may make Maguire wish he were dead, they would not actually kill him. (*Id.*). Abbott then prescribed Maguire the drug clonidine to reduce the effects of the withdrawals. (Dkt. No. 180-1, p. 51).

Maguire began experiencing psychotic episodes related to the methadone withdrawals. (*Id.*). Consequently, he spent the next week in and out of the prison infirmary. (*Id.*, pp. 51–52). During this period, Maguire alleges prison officials found him on the floor of the observation cell with extremely low blood pressure, apparently due to severe dehydration. (Dkt. No. 185-1, p. 7). Prison nurse Steven Mecham and his supervisor administered an IV, which successfully revived Maguire. (*Id.*). Rather than send him to a hospital, they released Maguire back into the infirmary observation cell. (*Id.*). The next morning, July 14, 2008, a prison physician examined Maguire, who reported that he felt "pretty much okay." (*Id.*, p. 38); (Dkt. No. 81-1, 711). Prison officials released Maguire to his regular holding cell that same day. (*Id.*, p. 7).[4]

---

[3] There are numerous page numbers found on each of the docket files. The court uses the page numbers that correspond to the docketed filing.

[4] Maguire's opposition to summary judgment contends he was released into general population immediately after the IV incident. But this representation is contradicted by Maguire's medical records and deposition testimony, which reflect that he was in observation during this period and only released into general population after he confirmed to the prison doctor that he was feeling "pretty much okay." (Dkt. No. 81-1, p. 711;

On July 15, 2008, Maguire noticed he was having trouble controlling his left arm. (*Id.*). He filled out an emergency healthcare request form, which read, "my left arm and hand are losing their use and I [am] very worried and suffering mentally and physically." (Dkt. No. 180-1, p. 52). Abbott saw Maguire later that afternoon. (*Id.*). When Maguire arrived at the appointment, the prison guard who accompanied him informed Abbott that Maguire appeared to be dragging his left leg. (Dkt. 180-1, p. 62). Additionally, Maguire told Abbott that he was having difficulty controlling the left side of his body, including his left arm and extremities. (Dkt. No. 185-1, p. 8). Abbott began to treat Maguire by massaging his upper body. While doing so, Abbott noticed a prominent spasm in Maguire's left trapezius muscle and applied pressure on the associated trigger point. (*Id.*). Maguire reported this provided him some immediate relief. (Dkt. No. 180-1, p. 52). Abbott diagnosed Maguire with a muscle spasm and prescribed a muscle relaxant and physical therapy. (*Id.*, pp. 52–53).

That night, Maguire's left arm began seizing and his left leg became completely numb. (Dkt. No. 185-1, p. 8). He began convulsing and called for the other inmates to yell "man down" so prison guards and medical personnel would respond to his cell. (*Id.*, pp. 8–9 ). Prison Sergeant Jerry Miller and emergency medical technicians (EMTs) Craig Jensen and Rodger MacFarlane responded to the man down call and witnessed Maguire convulsing. (Dkt. No. 103-3, pp. 1–2). The three men helped Maguire to the cell floor. Jensen and MacFarlane checked his vital signs and informed Maguire he was having a seizure. (Dkt. No. 185-1, p. 9); (Dkt. No. 180-1, p. 76); (Dkt. No. 180, p. 36). Maguire responded that he did not believe he was having a seizure because he had never had a seizure before and was lucid throughout the event. Maguire explained that he had been around people having seizures and when they had seizures, they blacked out, which he

---

185-1, p. 7). Although the court must view the facts in the light most favorable to Maguire, the court cannot accept allegations that are unsupported and contradicted by record evidence. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

did not. Nevertheless, Jensen and MacFarlane told him there was nothing else they could do except place his mattress on the floor so that he would not fall off his bunk if it happened again. They told Maguire that if he needed any additional help, he should inform the officers, including Sergeant Miller, who would alert the EMTs. (Dkt. No. 180, p. 36); (Dkt. No. 185-1, p. 9).

Throughout that night until early the next morning, prison guards—including, according to Maguire, defendant Miller—passed by Maguire's cell to perform hourly inmate counts. (Dkt. No. 185-1, pp. 9–10). During each of these counts, Maguire claims he pled with the guards to summon the EMTs because he was experiencing continued twitching and cramping throughout the left side of his body. (*Id.*). Maguire's pleas went unanswered and eventually the guards stopped passing by his cell entirely. (*Id.*). Finally, on the morning of July 16, 2008, prison officials found Maguire sitting in his cell, unable to stand up. During the night, Maguire had urinated in his jumpsuit because he was unable to get up off the floor. (*Id.*, pp. 10; 43). Prison officials transferred him to the University of Utah Medical Center, where doctors determined that he had suffered a severe stroke. (*Id.*, p. 11).

Maguire filed this civil rights action against Garden, Abbott, Mecham, Jensen, MacFarlane, and Miller (collectively, Defendants), asserting claims for violations of the Eighth Amendment of the U.S. Constitution and the Unnecessary Rigor Clause of the Utah Constitution. Defendants collectively seek summary judgment, claiming they are entitled to qualified immunity on Maguire's § 1983 claims. They also ask the court to grant summary judgment on Maguire's claims under the Utah Constitution because Maguire has an adequate remedy under federal law. (Dkt. No. 175). The court begins by considering whether Defendants are entitled to qualified immunity on Maguire's § 1983 claims before turning to Maguire's state law claims.[5]

---

[5] Maguire passed away while the case was proceeding in this court and is now represented by the executor of his estate. For clarity's sake, the court refers to Maguire in the present tense.

## ANALYSIS

### A. *Qualified Immunity*

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cty. of S.F. v. Sheehan*, ___U.S. ___, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted). "When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must clear two hurdles to defeat the defendant's motion." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010). "The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Id.* The court addresses each of these prongs in turn, applying Maguire's version of the facts. *See Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015) (recognizing the court has the freedom to decide which of the two prongs to examine first).

### 1. Constitutional Violation

The constitutional right implicated here is Maguire's right to adequate medical treatment in prison. To state a § 1983 claim for inadequate medical care, Maguire must demonstrate prison officials were deliberately indifferent to his serious medical needs. *See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective inquiry asks whether "the deprivation alleged [is], objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). "A medical need is sufficiently [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (internal quotation marks omitted).

The subjective inquiry asks whether the defendant acted with the requisite state of mind, defined as one of "deliberate indifference" to "an excessive risk to inmate health or safety." *Id.* "The deliberate indifference standard lies 'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 836). "The Supreme Court in *Farmer* analogized this standard to criminal recklessness, which makes a person liable when [he] consciously disregards a substantial risk of serious harm." *Id.* Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Id.* Whether a defendant was aware of, and consciously disregarded, a substantial risk is a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Gonzalez v. Martinez*, 403 F.3d 1179, 1183 (10th Cir. 2005) (emphasis omitted). For instance, "the factfinder may conclude that a prison official knew of a substantial risk *from the very fact that the risk was obvious*." *Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014) (emphasis added). Because Defendants concede Maguire has satisfied the objective seriousness prong, the court considers whether any defendant was subjectively deliberately indifferent to Maguire's serious medical needs.

   *a.   Richard Garden*

Maguire's claim against Garden stems from Garden's decision not to taper Maguire off methadone. According to Maguire, this decision evidences deliberate indifference to a substantial risk of serious harm because Garden knew the withdrawals would be so painful, they may make Maguire wish he were dead. *See, e.g.*, *Mata*, 427 F.3d at 755 (recognizing extreme

pain and suffering can establish a sufficiently serious harm to be cognizable under the Eighth Amendment). The court is not persuaded.

An inmate is not entitled to any particular course of treatment while incarcerated. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (stating that "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). Rather, a prison doctor is "free to exercise his or her independent professional judgment" in assessing the medical treatment necessary. *Callahan*, 471 F.3d at 1160. Accordingly, the Tenth Circuit has held that the decision by jail officials to discontinue an inmate's prescribed methadone does not constitute deliberate indifference where the inmate is given clonidine as a replacement to treat the withdrawal symptoms. *Boyett v. Cty. of Wash.*, 282 F. App'x 667, 674 (10th Cir. 2008).[6]

As in *Boyett*, here Garden exercised his medical judgment to determine Maguire should not be placed on a methadone-tapering program. Although methadone may have been Maguire's preferred method of treatment, Garden was entitled to weigh the potential severity of the withdrawals against the risks of prescribing methadone, including the risk of physical abuse from other inmates. Moreover, Maguire was given clonidine to assist with the withdrawal symptoms. Thus, even assuming Maguire's withdrawal pains were sufficiently serious to give rise to a constitutional claim, a reasonable jury could not find that prison officials were deliberately indifferent to that pain. Garden is therefore entitled to summary judgment.

   b.   *Chris Abbott*

Maguire's claim against Abbott stems from Maguire's emergency medical visit to

---

[6] Though not binding, the court finds unpublished decisions of the Tenth Circuit persuasive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

Abbott's office on July 15, 2008.[7] Maguire alleges that Abbott was deliberately indifferent to his serious medical needs when he failed to diagnose Maguire's symptoms as the onset of a stroke and instead treated him for a muscle spasm. In response, Abbott claims his failure to diagnose accurately Maguire's symptoms constitutes a mere medical misdiagnosis, which is insufficient to establish subjective deliberate indifference. *See Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) (holding that "a misdiagnosis, even if rising to the level of medical malpractice" is insufficient to establish the subjective component of a deliberate indifference claim). The court rejects Abbott's arguments.

Although Abbott is correct that a mere misdiagnosis is generally insufficient to establish deliberate indifference to a serious medical need, this principle is not absolute. The Tenth Circuit has explained that a medical provider does not act with deliberate indifference where he or she fails to diagnose a serious medical condition by relying on symptoms that are consistent with a less severe ailment. *See id.* at 1234 ("Where a doctor faces symptoms that could suggest either indigestion or stomach cancer, and the doctor mistakenly treats indigestion, the doctor's culpable state of mind is not established even if the doctor's medical judgment may have been objectively unreasonable."); *accord Burnett v. Miller*, No. 14-7069, 2015 WL 7352007, at *7 (10th Cir. Nov. 20, 2015) (recognizing that where "an inmate's symptoms could suggest multiple different diagnoses, the fact a medical provider mistakenly treated the wrong condition" does not establish deliberate indifference). But the Tenth Circuit has also recognized that a jury may infer conscious disregard where a provider misdiagnoses an obvious risk and then responds to that risk with treatment that is patently unreasonable. *See, e.g.*, *Blackmon v. Sutton*, 734 F.3d 1237, 1245 (10th Cir. 2013) (citing *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)) (evidence was

---

[7] Maguire also brings a claim against Abbott for Abbott's involvement the decision to discontinue Maguire's methadone prescription. Abbott is entitled to summary judgment on this claim for the same reasons Garden is entitled to summary judgment.

sufficient to show conscious disregard to a substantial risk of serious harm where prison staff provided an inmate with mild antacids in response to a badly bleeding ulcer); *Oxendine v. Kaplan*, 241 F.3d 1272, 1278–79 (10th Cir. 2001) (holding that a prison doctor could be liable for deliberate indifference when, in response to a gangrenous finger, insisted the finger was heeling and prescribed Tylenol to treat the pain). Considering the facts in the light most favorable to Maguire, genuine disputes exist regarding whether Abbott's misdiagnosis in this case was so obviously unreasonable that it could evidence deliberate indifference.

For example, Abbott knew Maguire had lost control of his left arm and hand. Given these symptoms, diagnosing a muscle spasm in Maguire's shoulder might not be unreasonable (even if ultimately incorrect) because such a diagnosis may be consistent with those symptoms. But there is also evidence in the record that Abbott knew Maguire had lost control of the left side of his body. Indeed, Maguire testified he told Abbott he was "having a difficult time controlling the left side of my body, my left hand, my left extremities." (Dkt. No. 185-1, p. 8). Maguire further claims the guard observed Maguire dragging his left leg and reported this observation to Abbott. In light of this fact, a reasonable jury could conclude Maguire's loss of control on the entire left side of his body was so obviously inconsistent with a simple muscle spasm in his shoulder—and so obviously consistent with the symptoms of a stroke—that Abbott's contrary diagnosis and treatment was patently unreasonable. *Cf. Sealock*, 218 F.3d at 1208 (nurse was not deliberately indifferent when she diagnosed inmate with the flu rather than as having a heart attack because inmate was having chest pain, could not breathe, had throat pain, and had nausea and vomiting); *Burnett*, 2015 WL 7352007, at *6 (concluding registered nurse was not deliberately indifferent where she failed to diagnose chest pain as indicative of a heart attack because it was unclear whether the pain was cardiac, musculoskeletal or pleuritic, and when the nurse administered the

ECG, the test was normal). For this reason, the court finds a genuine dispute of fact exists as to whether Abbott was deliberately indifferent to Maguire's serious medical needs in violation of the Eighth Amendment.

    *c.*  *Steven Mecham*

    Maguire's claim against Mecham is based on Mecham's failure to provide adequate follow-up treatment after Maguire was found unconscious in the prison infirmary. Additionally, Maguire claims that Mecham violated his rights by failing to record the IV incident. These claims fail.

    On this record, there is insufficient evidence from which a jury could find that Mecham was deliberately indifferent to the potentially serious medical condition presented by Maguire's unconsciousness. Rather, when Maguire was found unconscious, Mecham and his supervisor determined that the proper course of treatment was to attempt to revive him with an IV rather than immediately transport him to a hospital. (Dkt. No. 185-1, p. 7). Maguire concedes the IV successfully revived him, after which they returned him to the infirmary observation cell until he could be seen by a physician. It was only after Maguire saw the physician and told him he felt "pretty much okay" that he was returned to his regular cell.[8] (Dkt. No. 81-1, p. 711; 185-1, p. 7). Mecham was "free to exercise his . . . independent professional judgment" in assessing the medical treatment necessary for Maguire's unconsciousness, *see Callahan*, 471 F.3d at 1160, and nothing in the record indicates the course of treatment was inconsistent with Maguire's symptoms or otherwise unreasonable, *see Self*, 439 F.3d at 1232–33 (stating that "where a doctor orders treatment consistent with the symptoms presented and continues to monitor the patient's

---

[8] As explained, the court does not consider Maguire's unsupported contention that Mecham released him into the general population rather than keep him in observation. But even assuming this fact were genuinely in dispute, Maguire's claim of deliberate indifference would still fail because he does not identify any harm that resulted from the decision to place him in general population rather than in the prison infirmary.

condition, an inference of deliberate indifference is unwarranted"). Thus, Maguire's claim that Mecham was deliberately indifferent to his serious medical condition cannot survive summary judgment.

Maguire's claim that Mecham violated his constitutional rights by failing to record the IV incident is also unavailing. Maguire has presented no evidence to show how the failure to record in this instance resulted in the denial of adequate medical care. *See, e.g.*, *Davis v. Caruso*, No. 07-CV-11740, 2009 WL 878193, at *2 (E.D. Mich. Mar. 30, 2009) (recognizing that Eighth Amendment violations stemming from inadequate, incomplete, inaccurate, or mislaid medical documents are typically reserved for claims alleging "systematic inadequacies in a jail's or prison's systems of medical record keeping"); *Ferguson v. Corr. Med. Servs., Inc.*, No. 5:05CV00078 GHBD, 2007 WL 707027, at *3–4 (E.D. Ark. Mar. 1, 2007) (granting summary judgment to defendant where inmate failed to demonstrate that prison doctor's failure to place a note of a procedure in a chart gave rise to a grave risk of unnecessary pain and suffering). Likewise, Maguire presents no evidence to show Mecham acted with deliberate indifference in failing to record the incident. Thus, Mecham is entitled to summary judgment on Maguire's claims.

### d. Craig Jensen and Rodger MacFarlane

Maguire claims EMTs Jensen and MacFarlane were deliberately indifferent when they responded to Maguire's cell, diagnosed him as having a seizure, and failed to provide any follow-up treatment. Jensen and MacFarlane have moved for summary judgment on two grounds. First, they argue Maguire's claim is procedurally barred because he initially erroneously named them as John Does believed to be "Med. Tech. Craig" and "Rogers," and consequently failed to serve them within the applicable statute of limitations. Next, they argue

Maguire failed to show they were deliberately indifferent to his serious medical needs. Accordingly, the court addresses the statute of limitations before turning to the merits of Maguire's claims.

        i.      <u>Statute of Limitations</u>

For a § 1983 claim that arises in Utah, the statute of limitations is four years. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). Although Maguire filed his complaint in 2010, two years after the incident, it is undisputed that Maguire did not serve Jensen and MacFarlane until 2014, six years after the incident. Nevertheless, Maguire asks the court to find that the statute of limitations should be equitably tolled.

The court must look to Utah law to determine whether Maguire is entitled to equitable tolling. *See Harrison v. United States*, 438 F. App'x 665, 668 (10th Cir. 2011) (holding that "[s]tate law ordinarily governs the application of equitable tolling in a federal civil-rights action"). In Utah, the doctrine of equitable tolling does not permit courts to simply "rescue litigants who have inexcusably and unreasonably slept on their rights." *Garza v. Burnett*, 321 P.3d 1104, 1107 (Utah 2013) (internal quotation marks omitted). Rather, it "prevent[s] the expiration of claims to litigants who, *through no fault of their own*, have been unable to assert their rights within the limitations period." *Id.* (internal quotation marks omitted). For this reason, Utah courts have limited the doctrine to instances in which it would be manifestly unjust to apply the statute of limitations. *See, e.g.*, *id.* at 1108 (holding that the statute of limitations should be equitably tolled where a claim that would have been timely filed became untimely because of a subsequent Supreme Court ruling that shortened the statutory time period); *Berneau v. Martino*, 223 P.3d 1128 (Utah 2009) (recognizing that the equitable discovery rule may toll a statute of limitations where the plaintiff did not know and could not reasonably have discovered the facts

underlying the cause of action in time to commence an action within the limitations period, and either 1) the plaintiff was not aware of the cause of action because of the defendant's concealment or misleading conduct or 2) the case presents exceptional circumstances).

Viewing the present case in light of Utah's equitable tolling jurisprudence, the court finds the undisputed record supports equitable tolling to allow Maguire to pursue his claims against Jensen and MacFarlane. To begin, Maguire's failure to name these defendants accurately was based on his review of prison records that confusingly identified Jensen and MacFarlane only by their first names: Craig and Rodger. (Dkt. No. 103-2). Further, once the prison informed Maguire that Med. Techs "Craig" and "Rogers" did not exist, Maguire attempted numerous times to identify the correct defendants. These efforts include, but are not limited to, attempting to serve the parties in a pre-litigation internal review and filing a Government Records Access and Management Act request, which officials denied. (Dkt. No. 180, p. 32). When these efforts proved unavailing, Maguire enlisted this court's assistance. The court then ordered the U.S. Marshals to serve the appropriate parties and directed the prison to provide the information necessary to effect service. (*Id.*, pp. 32–33). It was only in 2013, after the limitations period would have expired, that the State first indicated Med Techs "Craig" and "Rogers" may be Jensen and MacFarlane. In short, therefore, the court cannot conceive of anything more Maguire could have done to identify and serve Jensen and MacFarlane within the required time.[9] Thus, Maguire's failure to serve Jensen and MacFarlane was through no fault of his own; it was the result of the apparent unwillingness of prison officials—who were in sole control of the

---

[9] The court is unpersuaded by Defendants' argument that Maguire had the information necessary to identify Jensen and MacFarlane because they were identified in his medical records. These records contain nearly 800 pages of Maguire's medical history and list countless individuals who attended to Maguire at some time during his incarceration. Additionally, and most importantly, the medical history does not contain any record of Maguire's "man down" incident. Therefore, although Jensen's name does appear throughout the records, it does not appear in any relation to the relevant incident. Furthermore, MacFarlane's name never appears in Maguire's medical records. Thus, Maguire cannot have been expected to identify Jensen and MacFarlane from his medical records.

necessary information—to identify the correct defendants.

Likewise, Jensen and MacFarlane have failed to establish they suffered any prejudice as a result of the belated service. They identify no specific evidence, arguments, or problems with proof occasioned by the delay. To the contrary, evidence in the record shows the State was investigating this case and actively making arguments on behalf of Jensen and MacFarlane before they were even served. Indeed, the State argued that Jensen and MacFarlane were entitled to summary judgment on statute of limitations grounds in December 2012, shortly after the limitations period would have expired. Where the defendants have identified no prejudice from the belated service and Maguire's failure to serve them sooner was due to the prison's own deficiencies, the court finds it would be manifestly unjust to preclude a merits-based review of Maguire's claims. *Compare Myers v. McDonald*, 635 P.2d 84, 86–87 (Utah 1981) (equitably tolling the statute of limitations where, despite plaintiffs' efforts to discover their ward's whereabouts, they had no knowledge of his death or that a cause of action existed and the defendants were not prejudiced by the delay in filing suit), *with Ottens v. McNeil*, 239 P.3d 308, 328 (Utah Ct. App. 2010) (holding that equitable tolling was not appropriate where plaintiff waited until less than twenty days before the four-year limitations period expired before filing her complaint, which hampered her ability to identify and name the correct party and resulted in the loss of evidence). Equitable tolling is therefore appropriate in this case.

ii. <u>Deliberate Indifference</u>

Having found the statute of limitations has been tolled, the court considers the merits. Maguire appears to invoke two forms of deliberate indifference against Jensen and MacFarlane: their failure to treat properly his serious medical condition, and their failure as gatekeepers to provide him access to further medical care. *See Self*, 439 F.3d at 1232 (recognizing deliberate

indifference claims where the health official provides inadequate medical care or, if a prison health official serves as a gatekeeper for other medical personnel capable of treating the condition, delays or refuses to provide access to adequate medical care). In response, Jensen and MacFarlane argue they were not deliberately indifferent because they merely misdiagnosed Maguire as having a seizure and treated him accordingly. (Dkt. No. 175, p. 24). Additionally, they posit they did not deny Maguire access to necessary care because Jensen reported the incident to a charge nurse and Maguire received care the next morning. (Dkt. No. 180-1, pp. 77, 82). Jensen's and MacFarlane's arguments are not persuasive.

First, a jury could reasonably conclude Jensen and MacFarlane were deliberately indifferent in assuming Maguire was having a seizure that required no further treatment. Maguire told them he did not think he was having a seizure because he had no history of seizures and he did not black out, which he knew is common for seizures. He also told them he was lucid throughout the entire event, another symptom inconsistent with a seizure. This is confirmed by Miller's declaration, which states that Maguire remained conscious and communicative throughout the episode. (Dkt. No. 103-3, p. 2). Given these facts, a reasonable jury could conclude that Jensen's and MacFarlane's determination that Maguire was having a seizure was so patently unreasonable that it evidences deliberate indifference.

Second, even assuming Jensen and MacFarlane acted reasonably in misdiagnosing Maguire's medical condition as a seizure rather than a stroke, a reasonable jury could conclude Jensen's and MacFarlane's treatment in response to what they perceived to be a seizure evidences a conscious disregard to a serious medical condition. Indeed, a seizure is objectively serious because a layperson would realize the need for a doctor's attention. *See Sealock*, 218 F.3d at 1209; *see, e.g.*, *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (recognizing that

15

"medical conditions much less serious than seizures have satisfied" the objective seriousness standard). But in response to the apparent seizure, Jensen and MacFarlane did not attempt to assess the seizure's cause, take any action to prevent further seizures, or continue to monitor Maguire's condition. Rather, Jensen and MacFarlane simply placed Maguire's mattress on the cell floor and informed him to call for the guards if he needed additional medical attention. Thus, contrary to Defendants' arguments, Jensen and MacFarlane did not merely misdiagnose and treat what they perceived to be a seizure; they essentially provided no treatment at all. In these circumstances, a reasonable jury could conclude this conduct was deliberately indifferent to a serious medical need. *See, e.g.*, *Blackmon*, 734 F.3d at 1244 (holding that prison mental health professionals were not entitled to summary judgment on qualified immunity grounds where they failed to provide a pretrial detainee with "any meaningful mental health care, despite his obvious need for it"); *Self*, 439 F.3d at 1232 (recognizing that a jury can infer conscious disregard where "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency").

Similarly, Maguire has presented sufficient evidence to show genuine questions of fact exist regarding whether Jensen and MacFarlane failed as gatekeepers to provide Maguire access to the necessary treatment for what they believed to be a seizure. As explained, a reasonable jury could find that, when confronted with a seizure, the need for additional treatment or referral to a medical specialist is obvious. *See Self*, 439 F.3d at 1232 (holding that a claim for gatekeeper liability is actionable "where the need for additional treatment or referral to a medical specialist is obvious"); *cf. Richards v. Daniels*, 557 F. App'x 725, 728 (10th Cir. 2014) (holding officials were not deliberately indifferent where they responded to an inmate's seizure by providing him with prompt medical attention and medicine to treat seizures); *Boyett*, 282 F. App'x at 675

16

(holding officials were not deliberately indifferent where they transferred an inmate to a medical observation cell for continued monitoring after a fall they believed was caused by a seizure or other serious medical condition). Jensen and MacFarlane were aware that Maguire had never had a seizure previously, did not black out during the event, and did not believe he was having a seizure. Certainly these facts are sufficient to require further inquiry from a more knowledgeable medical professional to ascertain the seizure's potential cause and the appropriate treatment. But it is genuinely disputed whether Jensen or MacFarlane notified or sought assistance from any prison medical professional regarding Maguire's condition.

Jensen claims that, pursuant to prison policy, he notified the charge nurse of Maguire's seizure. (Dkt. No. 180-1, p. 77). But there is no corresponding medical record to show any such notice. Likewise, Jensen's declaration does not provide supporting details such as the name of the charge nurse and there is no declaration from the charge nurse attesting that he or she was ever notified. Nor does MacFarlane's declaration—despite being similar to Jensen's declaration in every other material respect—contain any similar representation. Moreover, there is no evidence the charge nurse responded, gave assistance, or even gave Jensen guidance about how to respond to the situation, all of which a jury could reasonably conclude would have been expected if Jensen had in fact notified the charge nurse. At the summary judgment stage, the court is under no obligation to accept as true Jensen's self-serving statements, particularly when unsupported by record evidence. *See e.g. Parkhurst v. Lampert*, 339 F. App'x 855, 862 (10th Cir. 2009) (rejecting "a contention made in [a] summary judgment response brief, which was . . . a conclusory, self-serving statement unsupported by any evidence"); *Bennett v. Aetna Life Ins. Co.*, 2013 WL 4679482, at *11 (D. Utah Aug. 30, 2013) (rejecting defendants' argument that the plaintiff was seen by someone with appropriate medical credentials when there was no evidence

to support this claim other than the defendants' self-serving declaration). Accordingly, the court finds that genuine disputes preclude summary judgment on Maguire's claims against Jensen and MacFarlane for their actions in failing to appropriately diagnose, treat, or ensure Maguire had access to adequate medical care for his apparent seizure.

### e.   Jerry Miller

Finally, Maguire claims Miller was deliberately indifferent to his serious medical needs when he failed to alert the EMTs of Maguire's repeated pleas for help throughout the evening of July 15, 2008. In response, Miller contends Maguire has not presented sufficient evidence to show that Miller personally participated in any constitutional violation because there is no evidence to show Miller had knowledge of Maguire's requests for help. *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2010) (holding that "[i]n order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established"). The court disagrees.

Contrary to Miller's representation, there is sufficient evidence in the record for a reasonable jury to conclude Miller personally performed at least one of the nightly counts and therefore had actual knowledge that Maguire had requested medical assistance.[10] In Maguire's sworn affidavit, he stated that "Officer 5," responded to the "man down" call and helped the EMTs place Maguire's mattress on the floor. (Dkt. No. 180-1, p. 63). The record shows, and Miller concedes, that he was one of the officers who responded to Maguire's cell during the

---

[10] Maguire does not direct the court to this evidence in his briefing. Rather, he takes the litigation position that Miller can be liable even if he did not personally perform the counts because he had an affirmative duty to provide access to medical care arising out of his initial involvement with the man down call. At the summary judgment stage, the court is not bound by Maguire's legal arguments, but must instead consider the record evidence. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003) (summary judgment "is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law") (internal quotation marks omitted); *see also* Fed.R.Civ.P. 56(c)(3) ("The court need consider only the cited materials, *but may consider other materials in the record*.") (emphasis added).

"man down" call. (*See* Dkt. No. 103-3, p. 1–2). Maguire's affidavit further states that the EMTs instructed him to alert "Officer 5" if he had any other problems throughout the night. (Dkt. No. 180-1, p. 63). Maguire later clarified that Miller was the officer whom the EMTs indicated he should alert if he had any further problems during the night. (Dkt. No. 185-1, p. 9). Therefore, a reasonable jury could infer that "Officer 5" in Maguire's affidavit refers to Miller. And importantly, Maguire stated in his affidavit that during "[e]very hourly count, *at some of which Maguire recognized Officer 5*[,] Maguire asked the counting officer to please call medical." (Dkt. No. 180-1, p. 64) (emphasis added). From these facts, a reasonable jury could infer that Miller was present during some of the hourly counts and heard Maguire's pleas for help.[11]

Assuming Miller was personally aware Maguire had requested medical assistance, the court has little difficulty concluding Miller's failure to notify medical personnel of Maguire's requests for assistance is sufficient to show a constitutional violation. Here, the evidence establishes Miller had knowledge that Maguire had suffered (at the very least) a seizure, and that Jensen and MacFarlane had instructed Maguire to notify the guards if he needed further medical attention. Additionally, Miller knew Maguire's mattress had been placed on the floor, presumably to prevent him from falling from his bunk if he experienced a subsequent seizure. From these facts, a jury could infer Miller was aware that Maguire had suffered, and was likely to continue to suffer, seizures. A reasonable jury could therefore conclude that, given this awareness, Miller's subsequent failure to notify medical professionals that Maguire had requested additional medical assistance throughout the night was deliberately indifferent to the serious health risk presented by Maguire's repeated apparent seizures. *See, e.g.*, *Estelle*, 429 U.S.

---

[11] The court notes that Maguire's testimony that Miller was one of the counting officers is not contradicted by other record evidence. Miller's declaration is silent regarding his actions during the hourly counts. Additionally, it is undisputed that Miller was on duty that night and acted in a supervisory role, from which a jury could reasonably infer he would have been involved in the counts.

at 104–05 (holding prison guards may be liable for deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); *Sealock*, 218 F.3d at 1210 (holding shift commander not entitled to summary judgment when he was told the plaintiff might be having a heart attack but refused to transport him to a doctor). Thus, genuine disputes of fact preclude summary judgment in Miller's favor on this claim.

### 2. Clearly Established Law

Having concluded Maguire has presented sufficient evidence to survive summary judgment on his constitutional claims against defendants Abbott, Jensen, MacFarlane, and Miller, the court now examines whether it was clearly established that these defendants' actions in these circumstances would constitute deliberate indifference to Maguire's serious medical needs. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotation marks omitted). Although there need not be a case precisely on point, "the contours of a right [must be] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Gomez*, 745 F.3d at 411 (internal quotation marks omitted). Accordingly, in assessing whether the right is clearly established, the court cannot define the right "at a high level of generality." *Cox v. Glanz*, 800 F.3d 1231, 1245 n.6, 1247 n.8 (10th Cir. 2015). Rather, the court must examine the specific facts of this case to determine whether the controlling cases establish each defendant took the alleged actions "with the requisite state of mind." *Id.* at 1249 (internal quotation marks omitted). Engaging in that inquiry, the court concludes the law was clearly established to put defendants

Abbott, Jensen, MacFarlane, and Miller on notice that their actions in this case could be deliberately indifferent to Maguire's serious medical needs.

For instance, it was clearly established that when Abbott was confronted with symptoms obviously indicative of a stroke and inconsistent with a mere shoulder muscle spasm, the decision to merely treat the muscle spasm would evidence deliberate indifference to a serious medical condition. *See e.g. Blackmon*, 734 F.3d at 1245–46 (recognizing it was clearly established as early as 1976 that providing mild antacids in response to badly bleeding ulcers and failing to provide access to obviously necessary medical care would be sufficient to support a claim for deliberate indifference). Likewise, it was clearly established that when Jensen and MacFarlane were confronted with what they believed to be a seizure, they had an obligation to provide Maguire meaningful treatment or at least access to an appropriate health care provider. *See, e.g.*, *Al-Turki v. Robinson*, 762 F.3d 1188,1194 (10th Cir. 2014) ("It has been clearly established in this circuit since at least 2006 that a deliberate indifference claim will arise when a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency.") (internal quotation marks omitted); *Mata*, 427 F.3d at 755–59 (holding that the evidence was sufficient to support a deliberate indifference claim when an inmate presented symptoms of severe chest pain to a prison nurse, and the nurse, knowing that such symptoms were a sign of a potentially serious health risk, failed to refer the inmate to a physician). Finally, it was clearly established that when Miller—with the understanding that Maguire had suffered a seizure—was confronted with Maguire's requests for further medical assistance, he had the obligation to provide Maguire access to necessary medical personnel. Miller was therefore on fair notice that failing to provide such access would be sufficient to show a constitutional violation. *See, e.g., Estelle*, 429 U.S. at 104–05 (deliberate

indifference may be found when prison guards intentionally deny or delay an inmate access to medical care); *Sealock*, 218 F.3d at 1210 (holding prison guard could be liable for deliberate indifference when he was told that plaintiff might be having a heart attack and refused to transport him to a doctor).

For all these reasons, the court finds defendants Garden and Mecham are entitled to summary judgment on qualified immunity grounds, but that questions of fact exist as to whether defendants Abbott, Jensen, MacFarlane, and Miller violated Maguire's clearly established right to adequate medical treatment.

### B.  State Constitutional Claims

Having concluded Maguire survives summary judgment on his § 1983 claims against defendants Abbott, Jensen, MacFarlane, and Miller, the court now considers Maguire's claims against these defendants for violations of the Unnecessary Rigor Clause of the Utah Constitution. *See* Utah Const. art. I, § 9 ("Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor.").[12]

Under Utah law, "there is no express statutory right to damages for one who suffers a constitutional tort." *Nielson v. City of S. Salt Lake*, 2009 WL 3562081 at *9 (D. Utah Oct. 22, 2009) (*quoting Spackman ex rel. Spackman v. Bd. Of Educ. of Box Elder Cty. Sch. Dist.*, 16 P.3d 533, 537 (Utah 2000)). Therefore, "a Utah court's ability to award damages for a violation of a

---

[12] For the same reasons explained in the court's discussion of Maguire's federal § 1983 claims, the court finds that Maguire has failed to put forward sufficient evidence to show defendants Garden or Mecham violated any state constitutional provision. *See Dexter v. Bosco*, 184 P.3d 592, 597 (Utah 2008) (holding that a violation of the Unnecessary Rigor Clause requires a showing that the plaintiff was "subject to unreasonably harsh, strict, or severe treatment" that was "clearly excessive or deficient and unjustified"); *Bott v. DeLand*, 922 P.2d 732, 741 (Utah 1996) *abrogated on other grounds by Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 16 P.3d 533, 537 (Utah 2000) (same).Garden and Mecham are therefore entitled to summary judgment on these claims.

self-executing constitution provision rests on the common law."[13] *Id.* (*quoting Spackman*, 16 P.3d at 538). In order to sustain a common law remedy for a constitutional violation, a plaintiff must establish that existing remedies do not redress his or her injuries. *Id.* Thus, the question in the present case is whether Maguire can avail himself of state common law remedies when, as explained, he has federal remedies available under § 1983.

Although the Utah Supreme Court has not yet decided whether the existence of federal relief can preclude state common law claims, *Spackman*, 16 P.3d at 538 n.10, courts in the Tenth Circuit agree that a plaintiff's viable § 1983 claim provides sufficient remedy to redress violations of Utah's Constitution. *See Nielson* 2009 WL 3562081 at *9 (the existing remedy element requires a plaintiff "to show that existing remedies under § 1983 do not redress her injuries"); *Cavanaugh v. Woods Cross City*, 2009 WL 4981591, at *6 (D. Utah Dec. 14, 2009) ("Plaintiffs cannot state a claim for damages under the Utah Constitution because their injuries can be fully redressed through their 42 U.S.C. § 1983 claim."). Because the court has ruled that Maguire has viable claims under § 1983 against defendants Abbott, Jensen, MacFarlane, and Miller, Maguire cannot recover for any alleged violations of the Unnecessary Rigor Clause of the Utah Constitution. Accordingly, these defendants are entitled to summary judgment.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** in part and **DENIES** in part Defendants' Renewed Motion for Summary Judgment (Dkt. No. 175). It **GRANTS** summary judgment to all Defendants on Maguire's claims under the Utah Constitution. It further **GRANTS** summary judgment as to defendants Garden and Mecham on Maguire's § 1983 claims. The court **DENIES** summary judgment as to defendants Abbott, Jensen, MacFarlane, and Miller on Maguire's § 1983 claims.

---

[13] The parties concede the Unnecessary Rigor Clause is a self-executing provision.

SO ORDERED this 14th day of December, 2015.

BY THE COURT:

Clark Waddoups
United States District Court Judge