IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| STEVE SPENCER, representative of the ESTATE OF BRIAN MAGUIRE,<br><br>            Plaintiff,<br><br>v.<br><br>DR. RICHARD GARDEN, et al.,<br><br>            Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT MILLER'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:10-cv-00626<br><br>Judge Bruce S. Jenkins |

## INTRODUCTION

This case is about the medical care provided to Brian Maguire, an inmate who was incarcerated at the Utah State Prison. All defendants and all claims have been dismissed except for one: the Fifth Claim for Relief stated in Plaintiff's Amended Complaint.[1] In this claim, Maguire alleges that from 8:30 p.m. through 5:00 a.m. on the night of June 15–16, 2008, the "counting officer"—one of John Does #5, #6, or #7—failed to contact medical to respond to Maguire's requests for help, following a "man down call" in which he was treated for seizure symptoms,

---

[1] See Am. Compl. (doc. 31).

and failed to document the requests.[2]  Maguire later alleged that Sergeant Jerry Miller was "John Doe #5."[3]

Before, during, or after the "man down" incident, Maguire suffered a stroke. He alleges that Sgt. Miller's failure to respond to alleged requests for help, failure to take action before the man down, failure to affirmatively follow-up on Maguire's condition, and failure to pass on information about Maguire's condition to corrections officers taking over the next shift violated Maguire's Eighth Amendment right to be free from cruel and unusual punishment, and that such deliberate indifference caused or exacerbated his stroke.

Sgt. Miller moved for summary judgment, arguing that he was not deliberately indifferent to any serious medical need, or, in the alternative, that the rights asserted by Maguire were not clearly established on the date of the incident.[4] Maguire opposed the motion, and oral argument was held on June 15, 2018.  At oral argument, the Court determined that there is a lack of admissible evidence to suggest that Defendant Miller acted with deliberate indifference to Plaintiff's serious medical needs.  For the reasons stated at the hearing, and for the reasons stated herein, Defendant Miller's Motion for Summary Judgment will be granted.

---

[2] *Id.* ¶¶ 71–81.
[3] Mot. for Leave to File Am. Compl. (doc. 86), ¶ 4.
[4] Def.'s Mot. for Summ. J. (doc. 211).

## FACTS AND PROCEDURAL BACKGROUND

The following facts, viewed in a light most favorable to Maguire, form the basis of the Court's order:[5]

Sergeant Jerry Miller was, at all relevant times, employed as a sergeant with the Utah Department of Corrections. He was on duty in the Uinta 5 unit of the Utah State Prison in Draper, Utah, at about 7:40 p.m. July 15, 2008 when a "man down" call came out for Plaintiff Brian Maguire, an inmate housed in the unit.[6] At that time, Maguire was displaying symptoms consistent with a seizure: he was convulsing, shaking, couldn't control his hand, and "flopping around like a fish."[7] That led other inmates in the housing unit to call for assistance.[8]

Sgt. Miller heard the man down call and responded.[9] Two prison med-techs (EMTs) Craig Jensen and Rodger Macfarlane, who were already in the building, responded.[10] By the time they arrived, Maguire was responsive and communicative.[11] The med-techs took Maguire's vital signs, spoke with him, and

---

[5] Additional background facts describing the circumstances of Maguire's incarceration, conditions, and treatment are contained in the Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (doc. 189), and the Tenth Circuit's opinion on Defendants' appeal of that order, *Spencer v. Abbott* ___ F. App'x ___, 2017 WL 6016309 (10th Cir. Dec. 5, 2017). Because those facts are not relevant to the claims against Sgt. Miller, they will not be duplicated in this opinion.

[6] *See* Utah Department of Corrections Initial Contact Report (doc. 211, Ex. 3).

[7] *E.g.*, Jensen Dep. 22:19–22; Decl. of Craig Jensen, Ex. 7, ¶ 11; MacFarlane Dep 32:20–33:4.

[8] *See* Utah Department of Corrections Initial Contact Report (doc. 212, Ex. 3).

[9] *Id.*

[10] *Id.*

[11] *Id.*

determined that he likely had a seizure.[12] Consistent with the common practice for treating a seizure, the med-techs told Maguire to place his mattress on the floor to ensure that he would not injure himself if he had another seizure that night and suggested that he see a physician in the morning.[13] They told him that if he had additional problems, to alert Sgt. Miller, and then they would come and talk to him.[14] After the med-techs provided care, they left.[15]

One of the tasks to be completed following the incident was the "count" of inmates at 8:30 p.m., about forty-five minutes after the end of the incident.[16] This was a "stand-up" count where officers required the inmates to stand up to be counted and had to match the inmates with a log book containing photographs of their faces.[17] Two officers are responsible for completing the 8:30 count.[18]

Though Sgt. Miller does not remember being part of the 8:30 count,[19] documents indicate he played a role, and the Court accepts that he participated in the count for the purpose of this motion.[20] When one of the counting officers came to Maguire, the counting officer asked Maguire to get up.[21] Maguire told the

---

[12] *Id.*
[13] *Id.*
[14] Maguire Dep. 30:6–16, 31:13–14.
[15] Maguire Dep. 30:18-22.
[16] Miller Dep. 34:7-20, 37:18–38:3.
[17] *Id.*
[18] Miller Dep. 37:25–38:2.
[19] Miller Dep. 33:3-7.
[20] *See Uinta 5 Daily Log* (doc. 212, Ex. 5).
[21] Maguire Dep. 30:23-31:16.

counting officer "I can't stand up, I can't even sit up."[22] Though the counting

officer threatened to report Maguire for refusing a direct order, no sanction came

"because obviously [the counting officer] talked to the other officers that were

they, and they told him that it was a disputation where ... they had received

instructions from medical to leave me on the floor ...."[23]

Maguire has never described any interaction with Sgt. Miller during the 8:30

incident.[24] Maguire never alleged that he asked Sgt. Miller—or anyone—for help

immediately following the man-down incident or at the 8:30 count.[25]

It was not until 9 or 9:30 p.m. that Maguire himself believed he needed

further medical assistance.[26] Starting at the 10:30 p.m. count (the next count after

the 8:30 count), and continuing on through the night, Maguire specifically asked

the officer performing each count to get medical, because he was having cramping

muscle twitches.[27] Maguire did not yell for help, or call "man down" as had been

done before because he did not want to disturb any other sleeping inmates.[28] At

some point, perhaps by the 2:00 a.m. or 3:00 a.m. count, the officers simply

stopped coming by Maguire's cell.[29]

---

[22] *Id.* at 31:4–5.
[23] *Id.* at 31:8–12.
[24] *Id.*
[25] *Id.*; *see also id.* at 32:3–12.
[26] *Id.* at 194:9-24.
[27] Maguire Dep. 31:15–32:31.
[28] Maguire Dep. 165:7–14.
[29] Maguire dep. 33:7–34:2.

But Sgt. Miller was not there to hear any requests for aid, nor observe

Maguire's condition, because Sgt. Miller's shift ended at 10:00 p.m. that night.[30]

After the 8:30 p.m. count, Miller had no more interaction with Maguire that day.[31]

At the pill line the next morning, Maguire complained of left-sided

weakness.[32] He was taken to the infirmary, and prison medical staff sent him to

the hospital.[33] He was diagnosed as having a stroke.[34] He was returned to prison

and was regularly treated for the effects of the stroke.[35] Maguire was later also

diagnosed with terminal liver cancer, a condition unrelated to the stroke or

seizures.[36] He passed away in 2015 from the cancer.[37]

Before he passed away, Maguire sued medical staff, the responding med-

techs, and Sgt. Miller, alleging they were deliberately indifferent to his serious

medical needs, not only in responding to the man down call, but in a variety of

ways in treating a variety of Maguire's ailments.[38] In a previous order, a judge of

this Court granted summary judgment to most of the medical staff but denied

---

[30] Miller Dep. 29:21–24.
[31] *Id.*
[32] Maguire Dep. 34:20–35:12.
[33] *Id.* at 169:23-170:15.
[34] UDOC Hard Chart 000001 (doc. 211, Ex. 8).
[35] Maguire Dep. 170:16-19.
[36] *Id.* at 43:11–23, 183:3–8.
[37] *See* Statement Noting a Party's Death (doc. 173) at 1. Steve Spencer, the personal representative of Maguire's estate, substituted as plaintiff in the action. Joint Status Update (doc. 174) at 1. For consistency's sake, the Court will refer to the plaintiff as Maguire throughout the opinion.
[38] *See* Amended Complaint (doc. 31).

summary judgment to the two med-techs and Sgt. Miller.[39] The Tenth Circuit reversed as to the med-techs, granting them summary judgment, but determined it did not have jurisdiction to reach Sgt. Miller's appeal and dismissed it.[40]

The only claim remaining is Maguire's deliberate indifference claim lodged against Sgt. Miller. After remand, the parties engaged in limited discovery, and Sgt. Miller then moved for summary judgment. In his motion, Sgt. Miller asserts that, as a matter of law, he was not deliberately indifferent to any serious risk of harm to Maguire. By raising the defense of qualified immunity, he also asserts that any rights claimed to be violated by Maguire were not clearly established at the time of the incident.

## LEGAL STANDARD

Sgt. Miller's summary-judgment motion is governed by Federal Rule of Civil Procedure 56. Summary judgment shall be granted to the moving party when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Jones v. Salt Lake County*, 503 F.3d 1147, 1152–53 (10th Cir. 2007) (citing former Federal Rule of Civil Procedure 56(c)). Sgt. Miller has the initial burden to establish the absence of material fact to support the non-moving party's claims.

---

[39] *See* Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (doc. 189).
[40] *See* Order and Judgment No. 16-4009 (doc. 201).

*Jensen v. Kimble*, 1 F.3d 1073, 1076 (10th Cir.1993) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)). In so doing, he may cite to particular parts of

materials in the record supporting the fact, or may show that the cited materials "do

not establish the absence ... of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the non-movant fails to meet his burden as to one element of a claim, summary

judgment is appropriate on the claim. *Celotex Corp.*, 477 U.S. at 323

Sgt. Miller has raised the defense of qualified immunity to Maguire's claims.

Qualified immunity shields government officials who perform discretionary

functions from § 1983 damages suits so long as "their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818) (1982)).

Qualified immunity "is 'an immunity from suit rather than a mere defense to

liability ... it is effectively lost if a case is erroneously permitted to go to trial' [and

was created] to ensure that 'insubstantial claims' against government officials

[will] be resolved prior to discovery." *Pearson*, 555 U.S.at 231 (quoting *Mitchell*

*v. Forsyth*, 472 U.S. 511, 526 (1985)); *Anderson v. Creighton*, 483 U.S. 635, 640

n.2 (1987) (further citations and quotations omitted)). The doctrine protects "all

but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citations and quotations omitted).

When a state official asserts qualified immunity, she creates a rebuttable presumption that she is immune from the plaintiff's § 1983 claims. *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001). Two elements exist in the qualified immunity analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct...." *Pearson*, 555 U.S. at 231 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Thus, if "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates the right," the official is not qualifiedly immune. *al-Kidd*, 563 U.S. at 741. But if an official "might not have known for certain that the[ir] conduct was unlawful[,] then the [official] is immune from liability." *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1867 (2017). The Court may address either prong of the qualified-immunity analysis first. *Pearson* at 236.

# ANALYSIS

The only claim remaining in Plaintiff's Amended Complaint—the active complaint in this case—is the Fifth Claim for Relief.[41] In it, Maguire alleges that, from 8:30 p.m. through 5:00 a.m. on the night of June 15–16, the "counting officer"—one of John Does #5, #6, or #7—failed to contact medical to respond to Maguire's requests for help, and failed to document the requests.[42] Maguire later clarified that Sergeant Miller is "John Doe #5."[43]

As set forth in detail below, the Court concludes that Sgt. Miller is entitled to summary judgment because Maguire fails to identify admissible evidence that suggests Miller acted in a manner that was deliberately indifferent to Maguire's serious medical needs. The undisputed facts demonstrate that Miller adequately responded to Maguire's medical needs until his shift ended at 10:00 p.m. Thus, the court finds Miller is entitled to summary judgment on Maguire's Eighth Amendment claim.

## I. Admissibility of the Maguire Affidavit

On summary judgment, a court may consider only evidence that could "be presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P. 56(c)(2). Previously in this case, a fellow judge in this District concluded there

---

[41] See Am. Compl. (doc. 31).
[42] *Id.* ¶¶ 71–81.
[43] Mot. for Leave to File Am. Compl. (doc. 86), ¶ 4.

may be a jury question on whether Sgt. Miller was deliberately indifferent. The Court noted that Maguire stated in an affidavit that "at every hourly count, at some of which Maguire recognized [an officer later to be identified as Sgt. Miller,] Maguire asked the counting officer to please call medical."[44] That, combined with Sgt. Miller's knowledge that Maguire had "(at the very least) a seizure" led to the conclusion that a jury could find Sgt. Miller to be deliberately indifferent.[45]

For this motion, Maguire argues that this affidavit, combined with other evidence, indicates Sgt. Miller could have been deliberately indifferent to Maguire's health because it supports the propositions that (a) Maguire asked for help "at every hourly count" (with the inference that the statement includes the 8:30 count), and (b) that Sgt. Miller was present for counts after the 8:30 count.

In addition to arguing that the affidavit does not create an issue of fact, Sgt. Miller objects to the inclusion of the affidavit as hearsay not subject to any exception. Fed. R. Evid. 801, 802, 803, 804. Maguire acknowledges that the affidavit is hearsay, but argues that the residual exception to the hearsay rule, found in Federal Rule of Evidence 807, should apply. The parties thus apparently agree that the affidavit is hearsay not subject to any express exception.

---

[44] Mem. Decision & Ord. (doc. 189) at 19; Aff. in Support of Request (included in the case at docs. 17, 180-1, 251-1).
[45] *Id.*

## A. The Court Declines to Admit Maguire's Declaration Under the Residual Hearsay Exception

Maguire requests that the Court apply the residual hearsay exception, now codified at Federal Rule of Evidence 807, to allow the admission, and consideration, of the affidavit. The residual exception "is to be used in extraordinary circumstances ...." *United States v. Farley*, 992 F.2d 1122, 11226 (10th Cir. 1993) (discussing the exception codified in former Rule 803(24)). The Tenth Circuit has warned lower courts to "use caution when admitting evidence under Rule [807], for an expansive interpretation of the residual exception would threaten to swallow the entirety of the hearsay rule." *United States v. Tome*, 61 F. 3d 1446, 1454 (10th Cir. 1995).

To be admissible, the proponent of the evidence must overcome a "heavy burden" to demonstrate the materiality of the statement, that it demonstrates "circumstantial guarantees of trustworthiness" that are "equivalent" to the exceptions enumerated in Rules 803 and 804, that "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts ...", and that its admission will serve the interest of justice. *United States v. Trujillo*, 136 F. 3d 1388, 1396 (10th Cir. 1998); Fed. R. Evid. 807; *see also United States v. Zamora*, 784 F.2d 1025, 1031 (10th Cir. 1986); *New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650–51 (10th Cir. 1989) (both interpreting former rule 804(b)(5) and noting the burden on the

12

proponent of the evidence to meet the exception). There is no doubt that the affidavit is material. But Maguire fails to shoulder his burden on the remaining three elements to meet the exception.

First, there are serious questions of the trustworthiness of the statement. Though the statement was purported to be made under oath, that is "insufficient, standing alone, to meet the requirement of circumstantial guarantees of trustworthiness ...." *Crawford ex rel. Crawford v. City of Kansas City, Kan.*, 952 F. Supp. 1467, 1473 (D. Kan. 1997). Here, there are circumstances that undermine the affidavit's reliability. For example, Maguire does not mention Sgt. Miller by name in the affidavit. Utilizing the document to identify Sgt. Miller as the one responsible requires logical leaps and an overly-technical synthesis of numerous facts. This reduces the trustworthiness of the affidavit.

Also, the affidavit was originally proffered to the Utah Department of Occupational and Professional Licensing to support Maguire's claim of health care misconduct.[46] This was a document created in anticipation of litigation, affecting Maguire's motivation to be completely truthful. *E.g., Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 92 (5th Cir. 1989) (recognizing that statements "prepared in anticipation of litigation" was a factor in determining the statement untrustworthy). Beyond the inherent nature of the document, Maguire's focus in

---

[46] *See* Aff. in Support of "Request." (doc. 215-1) at 1.

the document was clearly on the actions of the health care providers who treated him before, during, and after the man-down call, rather than the custody staff.

Moreover, reading the affidavit as Maguire requests creates a conflict with other evidence in the record. *See United States v. Hall*, 165 F.3d 1095, 1110–11 (7th Cir. 1999) (recognizing that whether a statement is "insufficiently corroborated" is a consideration a district court may account for in determining trustworthiness). . The affidavit avers that "Officer #5" performed "at least" one of the counts later in the evening.[47] It also avers that Officer #5 was at the man-down scene. While Sgt. Miller was at the man-down call, evidence in the record suggests he did not perform any count identified in the affidavit. Officer #5 was not referred to in the 8:30 p.m. count (the only post-man-down count that could have involved Sgt. Miller). Instead, Maguire sets forth the 8:30 p.m. count in a separate paragraph, describing an interaction with a different officer (Officer 7). Also, Sgt. Miller could not have performed any of the counts past 10:00 p.m. because there is no evidence in the record to suggest Sgt. Miller worked past that time. Accordingly, the affidavit creates a conflict with other record evidence.

All of these factors cast doubt on the reliability of a conclusory statement that (a) Maguire asked for help at "every hourly count" (including the 8:30 p.m. count) and (b) Sgt. Miller was involved in "some of" the counts (after 8:30 p.m.).

---

[47] *Id.* at 8.

*Cf. United States v. Fernandez*, 892 F.2d 976, 983 (11th Cir. 1989) (recognizing that corroborating evidence must be "extraordinarily strong" to support admission of hearsay evidence under former 804(b)(5)).

Second, turning to the relevant probity of the evidence, Maguire cannot demonstrate that he could not have elicited this evidence from another source—in particular Maguire's deposition. Counsel for Maguire was at Maguire's deposition, which was taken to perpetuate his testimony, knowing Maguire had an unrelated, terminal illness. Maguire's counsel did not ask about the affidavit, nor attempt to put it into context. The only time Sgt. Miller's name came up in Maguire's deposition (other than a discussion about a discovery issue) was when he was discussing the man-down incident.[48] Maguire knew about Sgt. Miller at the time, and he never clarified that he saw Sgt. Miller at all later that night. Counsel for Maguire could have reasonably obtained the testimony contained in the affidavit, but did not do so. This element favors exclusion.

Third, and finally, the interests of justice and the rules of evidence are not promoted by admission. Stringing separate general statements in a DOPL affidavit–which contradict the remainder of the record and are, at least, inconsistent with Maguire's own deposition–and admitting those statements under the residual hearsay rule would not advance justice.

---

[48] Maguire Dep. 30:6–17, 162:4–163:24.

The Court will therefore exclude the affidavit. *Phillips*, 2007 WL 2156412, at * 4 (granting motion in limine to exclude affidavit of witness to altercation between plaintiff and police officer, where affiant had died, no deposition had been taken, and requirements of residual hearsay exception had not been met).[49]

## II. Eighth Amendment Legal Standards.

The Eighth Amendment's protection against cruel and unusual punishment includes a mandate that "prison officials must ensure that inmates receive adequate … medical care …." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not all denials of medical care are actionable under the Eighth Amendment. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Thus, a prison official may be liable only if he or she was deliberately indifferent to a serious medical need. *Id.* at 104–06.

Any Eighth Amendment claim must be evaluated under an objective and subjective prong: "Was the deprivation sufficiently serious?" and, if so, "Did the

---

[49] Maguire also argues that Sgt. Miller waived any arguments about the admissibility of the affidavit. The argument has not been waived. Sgt. Miller never had the opportunity, at the trial court level, to challenge its use. And Maguire provides no legal authority for the proposition that Sgt. Miller's decision not to challenge the admissibility of Maguire's affidavit on appeal somehow waives Sgt. Miller's ability to challenge the admissibility of it in further proceedings. While a failure to assert an objection to declarations at the trial level may waive the issue on appeal, *see, e.g., Associated Press v. Cook*, 513 F.2d 1300, 1303 (10th Cir. 1975), there is no waiver for subsequent proceedings. *See King v. Metcalf Homes Ass'n, Inc.*, 385 F. Supp. 2d 1137, 1140 n.2 (D. Kan. 2005) (considering hearsay statements on summary judgment because the defendant did not object, but permitting defendants to object at trial).

officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S.

294, 298 (1991); *accord Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th

Cir. 1999). A medical need is "sufficiently serious" "'if it is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention.'"

*Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*,

199 F.3d 1220, 1224 (10th Cir. 1999) (further citations and quotations omitted).

The subjective component requires the plaintiff to show that prison officials

were consciously aware that the prisoner faced a substantial risk of harm and

wantonly disregarded the risk "by failing to take reasonable measures to abate

it …." *Farmer*, 511 U.S. at 847. Delay in receiving treatment is cognizable only if

the delay was caused by deliberate indifference, and there was a substantial harm

as a result of the delay. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993); *Mata v.

Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

"'Gatekeeper' prison officials may be liable for a deliberate indifference

claim where they intentionally deny or delay access to medical care, or

intentionally interfere with treatment." *Dawson v. Lloyd*, No. 15-1367, 642 F.

App'x 883, 884 (10th Cir. Mar. 8, 2016) (ord. & j. not selected for publication);

*see also Estelle*, 439 U.S. at 104–05 (noting that deliberate indifference can

manifest when "prison guards ... intentionally deny[] or delay[] access to medical care).[50]

## III. Application of the Eighth Amendment Standard.

### A. *Miller Was Not Deliberately Indifferent.*

Assuming Maguire's condition could be considered sufficiently serious to trigger Eighth Amendment protection, Maguire's claim fails on the subjective element. The court will analyze in detail the various times at which Miller may have interacted with Maguire below. In short, Plaintiff simply fails to point to admissible evidence that indicates Miller exhibited deliberate indifference during time periods discussed below, even if those interactions are aggregated.

### 1. Prior to and during the "Man Down" Call.

Sgt. Miller was not deliberately indifferent to any of Maguire's needs *before* the "man down" call. Plaintiff implicitly acknowledges this because he argues Miller's first instance of deliberate indifference occurred during the "man down" call.[51] Further, there is no evidence that Sgt. Miller acted with deliberate indifference during the "man down" call. There is no dispute that Sgt. Miller

---

[50] The Tenth Circuit usually refers only to lower-level medical staff as "gatekeepers." *See Rife v. Okla. Dep't of Pub. Safety,* 854 F. 3d 637, 647 (10th Cir. 2017); *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005). But not always. *See Estate of Booker v. Gomez,* 745 F. 3d 405, 430–31 (10th Cir. 2014) (applying the "gatekeeper" standards from *Mata* to a deliberate-indifference claim to nonmedical corrections officers who used force on an inmate and then delayed getting the inmate medical treatment). But regardless of the nomenclature, for purposes of this case the test is the same—did the official actually know of a risk of harm and consciously disregard the risk. *See id.*
[51] *See* doc. 215 at 28–30.

responded to the "man down" call, and that medical arrived shortly thereafter.[52]

There is no dispute that the med-techs believed Maguire to have had a seizure and instructed the security staff to allow Maguire to put his mattress on the floor. There is no dispute that custody staff—including Miller—followed those instructions. Therefore, Miller did not act with deliberate indifference leading up to, or during, the med-tech's assessment and treatment. *See, e.g., Randall v. Bd. of Cnty. Comm'rs*, 184 F. App'x 723, 727 (10th Cir. June 13, 2006) (ord. & j. not selected for publication) (concluding that jail officials were not deliberately indifferent to plaintiff's medical needs when they followed physician's instructions regarding insulin and blood glucose testing requirements); *Ellison v. Scheipe*, 570 F. Supp. 1361, 1363 (E.D. Pa. 1983) ("[P]rison officials cannot be required to second guess the medical judgment of" medical professionals.); *Tantlinger v. Duchaine*, Civil Action No. 14-cv-2503, 2016 WL 8201447, at * 6 (D. Colo. Aug. 19, 2016) (ord. not selected for publication) (citing cases and concluding that the weight of authority suggests that there is no duty for non-medical prison officials to second-guess the judgment of trained medical staff). Based on the foregoing, Plaintiff fails to identify evidence that Sgt. Miller acted with deliberate indifference during the "man down" call.

---

[52] *See generally e.g.*, Initial Contact Report, Ex. 3.

## 2. Between the "Man Down" Call and the 8:30 p.m. Count.

Maguire's condition did not change from the time he was told to put his mattress on the floor until the 8:30 p.m. count. Maguire did not ask Sgt. Miller for help during that time. There is no evidence Miller interacted with Maguire or was otherwise deliberately indifferent to any risks between the "man down" call and the 8:30 p.m. count.

## 3. At the 8:30 p.m. Count.

Assuming Sgt. Miller was part of the 8:30 p.m. count, Plaintiff points to no admissible evidence that suggests that Sgt. Miller ignored any serious risk of harm to Maguire during that count. As an initial matter, it is doubtful whether Sgt. Miller participated in the 8:30 count. In his deposition, Maguire suggested that the officer performing the 8:30 count was not Sgt. Miller, but instead an Officer Mau, and Maguire suggested that the officer performing the 8:30 count did not know Maguire was permitted to stay on the floor.[53] Sgt. Miller knew Maguire was allowed to stay on the floor. Also, Maguire did not mention Sgt. Miller in this encounter, even though he knew who Sgt. Miller was.[54] Accordingly, it is doubtful this encounter actually involved Sgt. Miller. Nonetheless, the July 15, 2008, Daily Log for Uinta 5 (Maguire's cell block) indicates that Sgt. Miller, along with

---

[53] Maguire Dep. 31:6–12.
[54] *Cf. id.*

another officer, conducted the 8:30 p.m. head count.[55] Thus, viewing the facts in the light most favorable to Plaintiff, the court presumes Sgt. Miller performed, or at least overheard the exchange that occurred during, the 8:30 count.

Yet even if Sgt. Miller was the officer who performed the 8:30 count, or was present and heard the encounter, Sgt. Miller was not deliberately indifferent to any serious need of Maguire's because Maguire did not request any help during the 8:30 count.[56] At most, Maguire told the officer performing the 8:30 count (whether Miller himself or his colleague): "I can't stand up, I can't even sit up."[57] Notwithstanding this statement, Maguire testified in his deposition that it was not until 9:00 p.m., or 9:30 p.m., that he believed he needed additional help, and he did not begin asking for help until the 10:30 p.m. count.[58]

The Eighth Amendment does not require Sgt. Miller to read the mind of an inmate–who had, forty-five minutes earlier, been seen by medical staff–and summon additional help, when the inmate had the ability to ask for help and chose not to. The encounter during the 8:30 count cannot support any deliberate indifference claim against Sgt. Miller.

---

[55] Miller Dep. 33:3–7, 36:2–4; doc. 212, Ex. 5 (Uinta 5 Log).
[56] See id.; see also id. at 32:3–23.
[57] Maguire Dep. at 31:4–5.
[58] Id. 164:9–24, 165:24–166:18.

### 4. After the 8:30 Count.

Likewise, Sgt. Miller was not deliberately indifferent to any serious risk of harm to Maguire from the 8:30 p.m. count until Miller went off shift at 10:00 p.m. because Sgt. Miller was unaware that Maguire needed additional help.[59] There is no evidence in the record that Sgt. Miller interacted with Maguire after the 8:30 p.m. count. While we may not know the exact minute Sgt. Miller left Uinta 5 that night, there is no evidence to suggest he worked past 10:00 p.m. Further, we know that policy prohibited him from working past 10:00 p.m.[60] Also, the undisputed facts show that Sgt. Miller did not participate in the 10:30 p.m. count.[61] Thus, there is no admissible evidence that suggests Sgt. Miller had any contact with Maguire after the 8:30 count. Without any subjective knowledge, Miller could not have known about, and deliberately disregarded, any serious risk of harm.

## IV.   Clearly Established Law

Because the Court has determined that there was no constitutional violation, it need not determine whether any rights were clearly established.

## CONCLUSION

Maguire has not met his burden to demonstrate that Sgt. Jerry Miller was deliberately indifferent to any serious risk of harm to Maguire, and Sgt. Miller is

---

[59] Miller Dep. 29:21–24.
[60] Miller Dep. 50:12–51:7.
[61] *Cf.* Uinta 5 Daily Log, Ex. 5 to Mot. for Summ. J. (noting that Officers Cooms and Simons completed the 10:30 p.m. count.)

entitled to qualified immunity.  Because this motion disposes of the last remaining claim, Maguire's case will be closed.

## ORDER

For the reasons stated above, it is hereby

**ORDERED** that Defendant Miller's Motion for Summary Judgment (doc. 211) is **GRANTED**.  All claims against Defendant Miller are **DISMISSED** and this case is **DISMISSED**. Let judgment be entered accordingly.  Because all claims have been resolved, the Clerk shall **CLOSE** the case.

Dated this **28** day of June, 2018.

BY THE COURT

HONORABLE BRUCE S. JENKINS
United States District Court Judge